Haponski v. Constructor's, Inc.

---

EDWARD L. HAPONSKI v. CONSTRUCTOR'S INC., AND IOWA NATIONAL MUTUAL INS. CO.

No. 8410IC49

(Filed 18 December 1984)

**Master and Servant §§ 66, 96.5— evidence of maximum medical improvement sufficient to support findings—no direct evidence of psychological problems**

There was sufficient competent evidence from plaintiff's doctor to support the Industrial Commission's finding that plaintiff had reached maximum medical improvement, even though another doctor consulted by plaintiff disagreed, where plaintiff's first doctor testified that numerous tests produced only "minimal" or "subtle" objective findings of physical disease or malfunction, where plaintiff had been treated "conservatively," and where the doctor had concluded prior to the hearing that he could not help plaintiff further. Even though plaintiff's first doctor thought that plaintiff should see a psychologist or psychiatrist, there was no direct evidence that plaintiff had psychological problems, and the Commission could disbelieve the doctor's conclusion, especially since that conclusion had no basis in professional psychological or psychiatric inquiry. G.S. 97-25.

APPEAL by claimant from the North Carolina Industrial Commission. Opinion and award filed 9 November 1983. Heard in the Court of Appeals 18 October 1984.

On 20 October 1980, the claimant Edward Haponski, an employee of Constructor's Inc., slipped and fell while helping to move crates at work, striking his head and shoulder against a wall. Prior to this accident, he had suffered two other industrial accidents, one on 12 September 1979, which resulted in surgery on his cervical spine, and the other on 24 June 1980.

After the accident of 20 October 1980, the claimant continued to work with Constructor's until he was laid off on 2 January 1981. During this time he suffered lower back pain and headaches.

In September 1981, claimant was hospitalized and was conservatively treated. He was released on 28 September. He continued under the care of his doctor, Dr. Menno Pennink, until 14 November 1981, when Dr. Pennink advised him that he could return to work.

On his release from the hospital, claimant sought construction work, but without success. On 8 January 1982 claimant telephoned his doctor's office about severe back pain. Dr. Pennink's assistant advised him to remain at bed rest. He was hospitalized from 22-30 April 1982 and underwent a series of tests. None of these tests, however, indicated abnormalities significant enough to warrant surgery.

Claimant continued to complain of severe back pain, with radiation into his hips, buttocks, legs and groin. Dr. Pennink prescribed medication and physical therapy, but the pain persisted. When Dr. Pennink last saw the claimant, he was of the opinion that he had done all he could and that claimant required psychological or psychiatric help.

Claimant desired to be evaluated at the Duke University Medical Center. On 17 December 1982 he was examined by Dr. John Harrelson. Dr. Harrelson recommended that claimant undergo further diagnostic studies and, if it was determined that his pain could not be surgically treated, consult with the Duke Pain Clinic.

A hearing was conducted before Deputy Commissioner Linda Stephens on 12 January 1983. She concluded that claimant was temporarily totally disabled as a result of the injury suffered in the accident of 20 October 1980. She concluded also that claimant required additional medical treatment as recommended by Dr. Harrelson. The defendant-employer appealed to the Full Commission. On 9 November 1983, it found that the claimant had reached maximum medical improvement on 17 August 1982 and had suffered 20 percent permanent partial disability of the back.

Claimant now appeals the Full Commission's order.

*Blanchard, Tucker, Twiggs, Earls & Abrams, by Douglas B. Abrams, for claimant appellant.*

*Russ, Worth, Cheatwood & McFadyen, by Walter Y. Worth, Jr., for defendant appellees.*

ARNOLD, Judge.

Claimant contends that, in light of testimony by claimant's doctors that he should see a psychiatrist or psychologist or consult with the Duke Pain Clinic, the Full Commission erred in finding that defendant had reached maximum medical improvement.

In assessing claimant's contention, the scope of our review is to determine whether competent evidence was before the Commission to support its findings of fact and whether, in turn, its findings justify its legal conclusions and decision. *See Roper v. J. P. Stevens & Co.*, 65 N.C. App. 69, 73, 308 S.E. 2d 485, 488 (1983), *disc. rev. denied*, 310 N.C. 309, 312 S.E. 2d 652 (1984). To determine whether there was competent evidence, we may not reweigh the evidence ourselves:

> [B]ut may only determine whether there is evidence in the record to support the findings made by the Commission. If there is any evidence of substance which directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary. *Willis v. Drapery Plant*, 29 N.C. App. 386, 224 S.E. 2d 287 (1976).

*Porterfield v. RPC Corp.*, 47 N.C. App. 140, 144, 266 S.E. 2d 760, 762 (1980).

Our review of the record convinces us that the Full Commission had competent evidence before it to support a finding that Mr. Haponski had achieved maximum medical improvement. Dr. Pennink testified that numerous tests done on Mr. Haponski produced only "minimal" or "subtle" objective findings of physical disease or malfunction. Dr. Pennink treated Mr. Haponski "conservatively" and prior to the hearing in this case, determined that he could not help Mr. Haponski any further, and that he was at a "standstill." He thought Mr. Haponski needed a psychiatrist or psychologist, and arranged an appointment with one, Dr. Gomez. Mr. Haponski, however, did not see Dr. Gomez, but instead consulted Dr. Harrelson of the Duke University Medical Center.

Dr. Harrelson found that, on the basis of x-rays done in April 1982, the claimant had degenerative disc disease. He recommended further evaluation and, if necessary, consultation with the Duke Pain Clinic. It is important to note that Dr. Pennink also

found this evidence of degenerative disc disease, but was of the opinion that it constituted "minimal findings" and did not explain many if not most of Mr. Haponski's complaints. In his letter of 19 July 1982 to Iowa National Insurance Company, Dr. Pennink wrote that after Mr. Haponski was hospitalized for tests in 1982, he was "subsequently treated with continued bedrest and finally improved."

Doctors Pennink and Harrelson thus disagreed on the significance of physical findings as to the source of Mr. Haponski's pain. The Full Commission could disbelieve one or the other, and accept evidence given by one when it conflicted with that given by the other.

Claimant has presented no direct evidence that he has psychological problems. Indeed, he refused an appointment with a psychiatrist, arranged by Dr. Pennink. The only evidence in the record concerning psychological problems is the testimony of Dr. Pennink, a neurosurgeon, who has said that because he could find nothing significantly wrong with Mr. Haponski physically, he concluded that Mr. Haponski must need psychological help. The Full Commission could disbelieve Dr. Pennink's conclusion, especially since it had no basis in a professional psychological or psychiatric inquiry. "[T]he Commission is the sole judge of the credibility and weight to be accorded to the evidence and testimony before it." *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 166, 265 S.E. 2d 389, 390 (1980).

We find that in Dr. Pennink's testimony the Full Commission had competent evidence to conclude that the period of healing for Mr. Haponski's injury of 20 October 1980 was over, and that he had reached maximum medical improvement. The finding of maximum medical improvement supports the order and award given under the applicable statute. *See* G.S. 97-25; *see also Millwood v. Firestone Cotton Mills*, 215 N.C. 519, 2 S.E. 2d 560 (1939).

Affirmed.

Judges WELLS and HILL concur.