GARY L. ADERHOLT, Employee, Plaintiff v. A.M. CASTLE COMPANY, Employer; LIBERTY MUTUAL INSURANCE COMPANY, Carrier; Defendants

No. COA99-174

(Filed 2 May 2000)

### 1. Workers' Compensation— maximum medical improvement—determination of date

The Industrial Commission did not err in a workers' compensation proceeding in determining the date of plaintiff's maximum medical improvement where defendant contended that plaintiff's internal injuries had stabilized prior to an evaluation by Dr. Stutesman on 3 October 1994, but the implication of Dr. Stutesman's testimony concerning her evaluation was that plaintiff's condition will likely continue to deteriorate absent surgery. "Maximum medical improvement" is the point at which the injury has stabilized.

### 2. Workers' Compensation— loss of spleen—important organ

The Industrial Commission did not err in a workers' compensation action by awarding $20,000 for the loss of a spleen. Although defendants contend that the spleen does not serve as an important organ under N.C.G.S. § 97-31(24), there was testimony that the spleen filters the blood and protects the body from bacterial infections; given plaintiff's already vulnerable physical condition, his increased risk of infection, however slight, from loss of his spleen sustained the Commission's determination.

### 3. Workers' Compensation— sufficiency of findings—damaged or lost organs

The Industrial Commission did not abuse its discretion in a workers' compensation action in its awards for damaged organs where there was competent medical evidence to support the Commission's findings regarding the significance of each organ to the body's general health and well being and competent evidence to uphold the finding that the organs were either lost or permanently damaged.

Judge Greene concurring.

Appeal by defendants from opinion and award entered 31 August 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 16 November 1999.

*Richard B. Harper for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Jack A. Gardner, III, and Jeff Kadis, for defendants-appellants.*

TIMMONS-GOODSON, Judge.

A.M. Castle Company ("defendant-employer") and Liberty Mutual Insurance Company (collectively, "defendants") appeal from an opinion and award wherein the North Carolina Industrial Commission ("the Commission" or "the Full Commission") concluded that plaintiff reached maximum medical improvement with respect to all of his injuries on 3 October 1994. In its opinion and award, the Commission also determined the amount of compensation to which plaintiff was entitled for the loss or permanent impairment of various organs and body parts. For the reasons hereinafter stated, we affirm the Commission's decision.

The pertinent factual and procedural background is as follows: On 2 February 1989, while working as a salesman for defendant-employer, plaintiff sustained admittedly compensable injuries to his left arm and chest in an accident involving a logging truck. The truck was traveling toward plaintiff on a two-lane road in rural South Carolina, when a dangling chain from the truck crashed through the window of plaintiff's car and hit him in the left arm and upper torso. The chain struck plaintiff with such force that it mangled his arm, penetrated his chest, punctured his diaphragm, and ruptured his stomach. Despite his injuries, plaintiff managed to drive four additional miles before he received assistance and was transported to Spartanburg Regional Medical Center for emergency medical treatment.

Dr. John Tate performed surgery to repair plaintiff's chest injuries and found that the laceration to his stomach caused gastric contents to spill into the abdominal cavity. Dr. Tate cleaned the organs; however, within twenty-four hours of the surgery, plaintiff developed severe sepsis and required extensive treatment with antibiotics and antifungal medication. As a result of the infection, tissues within the abdominal cavity began to die and, thus, Dr. Tate completed more than a dozen laparotomies to clear out the necrotic tissue. Before bringing the infection under control, Dr. Tate had to remove plaintiff's spleen, most of his pancreas, and much of the omentum covering his internal organs. In the interim, plaintiff contracted adult respiratory distress syndrome and his kidneys tem-

porarily failed. Plaintiff also developed adhesions around his intestines.

Due to the gravity of plaintiff's injuries, he remained in the intensive care unit for over two months. When plaintiff was finally able to move about, he experienced numbness in his feet and legs and exhibited a bilateral foot drop when he walked. Dr. Tate consulted with a neurologist about plaintiff's symptoms and concluded that plaintiff suffered nerve damage from malnutrition and the strong medication he had been taking. However, no nerve testing was conducted to determine the degree of damage done.

Following his discharge on 20 May 1989, plaintiff underwent several surgeries to repair the injury to his left arm. The procedures were unsuccessful, however, and plaintiff ultimately lost virtually all use of his left arm and hand. On 24 January 1994, Dr. Stephen Harley, an orthopedic surgeon, performed a final evaluation of plaintiff's condition and found that he had reached maximum medical improvement of his right and left upper extremities. Dr. Harley was of the opinion that plaintiff would not be able to return to gainful employment.

In September of 1994, plaintiff visited Dr. Andrea Stutesman for a comprehensive evaluation of his medical condition. During the initial consultation, plaintiff reported an inability to use his left arm, bilateral foot drop, chronic diarrhea, non-insulin dependent diabetes, difficulty breathing especially with exertion, hoarseness, frequent urination, and sexual dysfunction. Dr. Stutesman referred plaintiff for an MRI, which revealed a significant compromise of the cervical cord at three levels. Given the likelihood that spur formation in the spine would worsen plaintiff's existing problems, Dr. Stutesman strongly encouraged plaintiff to see a neurosurgeon. Plaintiff refused, however, not wanting to undergo any further surgery. Therefore, Dr. Stutesman completed the impairment evaluation and, on 3 October 1994, gave plaintiff the following disability ratings: 49% permanent partial disability to his back, 13% permanent partial disability to his right lower extremity, 18% permanent partial disability to his left lower extremity, 19% permanent partial disability to his right upper extremity, and 100% permanent total disability to his left upper extremity. Dr. Stutesman further found that plaintiff suffered losses or impairments to his organs as follows: 51-100% of each lung, 49% of the upper digestive tract, 5% due to diabetes, 100% loss of spleen, 29% of the air passage, 14% speech impairment, 9% of sexual function, and 25% of skin flexibility.

## ADERHOLT v. A.M. CASTLE CO.

[137 N.C. App. 718 (2000)]

Defendants paid disability benefits to plaintiff pursuant to a properly executed Form 21 Agreement for Compensation. On 28 February 1995, plaintiff requested a hearing to determine his benefits under sections 97-31 and 97-29 of the North Carolina General Statutes so that he could make an election of remedies. Deputy Commissioner Morgan S. Chapman heard the matter and entered an order on 27 March 1997 finding plaintiff to be totally and permanently disabled. The deputy commissioner concluded that plaintiff reached maximum medical improvement on 24 January 1994 and that plaintiff should make an election of benefits as of that date. Plaintiff appealed, and the Full Commission entered an opinion and award concluding, instead, that plaintiff achieved maximum medical improvement as to all of his injuries and resulting conditions on 3 October 1994. The Commission, however, reiterated that "[p]laintiff reached maximum medical improvement with respect to his right and left upper extremities on 24 January 1994." Defendants appeal.

---

[1] At the outset, defendants argue that the Commission erred in concluding that plaintiff reached maximum medical improvement with respect to all injuries, except those to his right and left upper extremities, on 3 October 1994, the date of his final evaluation by Dr. Stutesman. Defendants contend that the record lacks any competent evidence to support this conclusion and that the evidence, instead, compels a conclusion that plaintiff attained maximum medical improvement of all of his injuries in January of 1994. We must disagree.

The scope of this Court's review on appeal from an opinion and award of the North Carolina Industrial Commission is well defined. We must determine whether the record before the Commission yields any competent evidence to support its findings of fact and whether those findings, in turn, sustain its conclusions of law. *Aaron v. New Fortis Homes, Inc.*, 127 N.C. App. 711, 714, 493 S.E.2d 305, 306 (1997). Thus, " '[i]f there is any evidence of substance which directly or by reasonable inference tends to support the findings, [we are] bound by such evidence, even though there is evidence that would have supported a finding to the contrary.' " *Haponski v. Constructor's Inc.*, 71 N.C. App. 786, 788, 323 S.E.2d 46, 47 (1984) (quoting *Porterfield v. RPC Corp.*, 47 N.C. App. 140, 144, 266 S.E.2d 760, 762 (1980) (citation omitted)).

The workers' compensation statutes do not define the term "maximum medical improvement." *Horne v. Universal Leaf Tobacco*

*Processors*, 119 N.C. App. 682, 688, 459 S.E.2d 797, 801 (1995). Our courts have, nevertheless, recognized that "maximum medical improvement" is achieved when the healing period ends, i.e., the moment " 'after a course of treatment and observation' " when the injury or condition is found to be permanent. *Id.* (quoting *Crawley v. Southern Devices, Inc.*, 31 N.C. App. 284, 289, 229 S.E.2d 325, 329 (1976)). In other words, "maximum medical improvement" is "[t]he point at which the injury has stabilized." *Id.*

We are satisfied from our review of the record that the Commission had before it competent evidence to support its conclusion that plaintiff reached maximum medical improvement of his chest injury and the resulting conditions on 3 October 1994. Dr. Stutesman testified that when she saw plaintiff in September of 1994, he was suffering from bilateral foot drop, non-insulin dependent diabetes, difficulty breathing, hoarseness, frequent urination, and sexual dysfunction. She further stated that neurological tests indicated "marked compromise of the cervical chord" at three levels. Given the risk that the nerve damage and bone spurring would worsen plaintiff's current condition, Dr. Stutesman strongly recommended that he consult a neurosurgeon, but plaintiff refused.

In light of the implication from Dr. Stutesman's testimony that plaintiff's condition will likely continue to deteriorate absent surgery to repair his cervical spine, we reject defendants' contention that plaintiff's internal injuries had stabilized prior to Dr. Stutesman's evaluation and rating. Thus, we find ample support in the record for the Commission's finding as follows:

> Given his refusal to undergo further surgeries as recommended by Dr. Stutesman, plaintiff has reached maximum medical improvement with respect to all of his injuries and resulting conditions. Plaintiff reached maximum medical improvement with respect to his right and left upper extremities on January 24, 1994.

This finding likewise supports the Commission's conclusion that "[p]laintiff has reached maximum medical improvement with respect to all of his injuries, and is found to be permanently and totally disabled as of October 3, 1994." Accordingly, defendants' argument that the Commission erred in determining the date of plaintiff's maximum medical improvement must fail.

[2] Next, defendants contend that the Commission erred in awarding plaintiff $20,000.00 for the loss of his spleen. Defendants take the

position that "the spleen does not serve as an 'important' organ" and that its "function to the human body is somewhat illusive"; therefore, the award of $20,000.00 was "excessive and constitue[d] an abuse of discretion." We find no merit to this argument.

Section 97-31(24) of the General Statutes allows recovery for the loss of an organ or body part for which workers' compensation benefits are not otherwise payable:

> In case of the loss of or permanent injury to any important external or internal organ or part of the body for which no compensation is payable under any other subdivision of this section, the Industrial Commission may award proper and equitable compensation not to exceed twenty thousand dollars ($20,000).

N.C. Gen. Stat. § 97-31(24) (1999). To support an award under this section, the record must contain "evidence as to the value of the [organ or body part] in question to the body of [the] plaintiff." *Porterfield*, 47 N.C. App. at 143, 266 S.E.2d at 762. However, "the amount of such an award is within the discretion of the Commission," *Hicks v. Leviton Mfg. Co.*, 121 N.C. App. 453, 456, 466 S.E.2d 78, 81 (1996), and "will not be overturned on appeal absent an abuse of discretion on [the Commission's] part," *Little v. Penn Ventilator Co.*, 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986). An abuse of discretion is shown where the decision is proven to be "manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

In the present case, Drs. Tate and Stutesman both testified that the spleen filters the blood and protects the body from bacterial infections. As Dr. Tate explained, "Early in life [the spleen] helps to provide resistance to infection and disease. Later in adulthood, it probably plays less of a part here, although still some." According to Dr. Stutesman, without the removal of damaged cells provided by the spleen, "you'll see increase in bacteria, so you get bacterial infections you would not ordinarily get." Given plaintiff's already vulnerable physical condition, the increased risk of infection, however slight, attributable to the loss of his spleen, sustained the Commission's determination that plaintiff lost an "important internal organ" for which the "proper and equitable compensation" was $20,000.00. *See Cloutier v. State*, 57 N.C. App. 239, 245, 291 S.E.2d 362, 366 (1982) ("testimony as to the consequences of damage to the sinuses demonstrates they are important internal organs"). Thus, we hold that the Commission committed no abuse of discretion.

[3] Defendants also challenge the following awards made by the Commission pursuant to section 97-31(24) of the General Statutes:

| | |
|---|---|
| Pancreas | $20,000.00 |
| Lungs ($20,000 for each lung) | $40,000.00 |
| Abdominal wall | $15,000.00 |
| Omentum | $10,000.00 |
| Intestines | $12,000.00 |
| Stomach | $5,000.00 |
| Reproductive organs | $15,000.00 |

Regarding the propriety of these awards, defendants' arguments follow one of three tracts: (1) that the organ was not "important" within the meaning of section 97-31(24); (2) that the organ was not lost or permanently damaged; or (3) that the Commission failed to consider the actual value of the organ or the damage thereto in determining the amount of compensation. We must disagree, as our review of the record reveals competent medical evidence to support the Commission's findings regarding the significance of each organ to the body's general health and well-being. In addition, the record includes competent medical evidence to uphold the Commission's findings that the organs at issue were either lost or permanently damaged. These findings, in turn, sustain the Commission's conclusion that the organs were important within the meaning of section 97-31(24) and that the amounts awarded for each were proper and equitable. Accordingly, we discern no abuse of the Commission's discretion in setting the challenged awards. Moreover, since we uphold the Commission's decision in favor of plaintiff, we need not address plaintiff's cross-assignments of error.

Based upon the foregoing analysis, we affirm the opinion and award of the Full Commission.

Affirmed.

Judge WALKER concurs.

Judge GREENE concurs with separate opinion.

Judge GREENE concurring.

I agree with the majority the Full Commission did not err in its award to plaintiff made pursuant to N.C. Gen. Stat. § 97-31(24). I,

however, write separately simply to clarify the test for determining whether an organ or body part is "important" under section 97-31(24).

Section 97-31(24) provides:

> In case of the loss of or permanent injury to any *important* external or internal organ or part of the body for which no compensation is payable under any other subdivision of this section, the Industrial Commission may award proper and equitable compensation not to exceed twenty thousand dollars ($20,000).

N.C.G.S. § 97-31(24) (1999) (emphasis added). An organ or body part is "important," within the meaning of section 97-31(24), if it has some significant value to the body of the employee. *See Porterfield v. RPC Corp.*, 47 N.C. App. 140, 143, 266 S.E.2d 760, 762 (1980); *The American Heritage College Dictionary* 682 (3d ed. 1993). Whether the organ or body part is "important" presents a question of law, *see In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (determination requiring exercise of judgment or application of legal principles is conclusion of law), which must be supported by findings of fact that the organ or body part has some significant value to the body of the employee, *see id.* (determination reached through logical reasoning from evidentiary facts is finding of fact).

In this case, defendant-employer has assigned error to the award made by the Full Commission pursuant to section 97-31(24) for several organs and body parts. The Full Commission made findings of fact regarding the significant value of each of these organs and body parts to plaintiff's body. These findings of fact, which are supported by competent evidence, support the Full Commission's conclusion of law[1] these organs and body parts are "important" under section 97-31(24). *See Lineback v. Wake County Board of Commissioners*, 126 N.C. App. 678, 680, 486 S.E.2d 252, 254 (1997) (appellate review of decision of Industrial Commission is limited to whether the Commission's findings of fact are supported by competent evidence, and whether the Commission's conclusions of law are supported by those findings of fact).

---

1. Although this conclusion is contained in the Full Commission's findings of fact, it is more properly labeled a conclusion of law. *See State ex rel. Utilities Comm. v. Eddleman*, 320 N.C. 344, 352, 358 S.E.2d 339, 346 (1987) (mislabeling of findings of fact and conclusions of law not fatal to opinion and award).