***********
Upon review of the competent evidence of record with reference to the errors assigned, the Full Commission upon reconsideration of the evidence modifies in part and adopts in part the Opinion and Award of the Deputy Commissioner.
 ***********
The following Findings of Fact and Conclusions of Law were entered into by the parties as:
 STIPULATIONS
1. Plaintiff's alleged date of injury was 24 September 1998 and again on 30 September 1999.
2. At the time of the injury, the parties were subject to the Workers' Compensation Act.
3. At the time of plaintiff's injury, an employer-employee relationship existed between the parties.
4. EBI Companies Insurance was the compensation carrier on the risk.
5. Plaintiff's average weekly wage was $293.39 subject to the Form 22, which had not been produced at the hearing before the Deputy Commissioner.
6. The parties stipulated that plaintiff was injured during the course and scope of duty and that both the injuries of 24 September 1998, and 30 September 1999, were compensable. The two injuries were to the same area of the body, both while working for defendant-employer.
6. After injury, plaintiff returned to work after being paid temporary total disability compensation.
7. Plaintiff was laid off by defendant-employer on 11 June 2000.
8. Plaintiff found new work at a lesser wage. Plaintiff alleges he was paid $6.50 per hour at defendant-employer and is now being paid $5.40 per hour with his new employer, where he was employed as of January, 2001.
9. Defendant-employer arranged for plaintiff to be paid State Unemployment Compensation for 16 weeks after he was laid off on 11 June 2000.
 EXHIBITS
The following Exhibits were received into evidence by stipulation of the parties:
1. All Industrial Commission forms that have been filed thus far are evidence in this case.
2. Medical Records denoted as Exhibit H and attached to the Pre-Trial Agreement.
Subsequent to the hearing before the Deputy Commissioner, the following Exhibit was submitted by defendants and agreed to by plaintiff as stipulated:
1. Stip. Exhibit #2: Revised Form 22 Wage Chart.
 ***********
Based upon the competent evidence of record, the Full Commission enters the following:
 FINDINGS OF FACTS
1. Plaintiff was born on 1 August 1969, and was age 31 at the time of hearing before the Deputy Commissioner.
2. Plaintiff has a high school education and has worked seven years for defendant-employer. Plaintiff was a "utility man" doing various types of jobs for defendant-employer.
3. Plaintiff's health was good prior to his admittedly compensable injuries, having no pre-existing disabilities.
4. Plaintiff was initially injured on 24 September 1998, when rough timber was being fed into a saw. A piece of lumber jammed in the saw and then repelled out of the saw penetrating plaintiff's abdomen. Plaintiff sustained severe internal injuries.
5. Plaintiff's pancreas was truncated. Approximately two-thirds of the pancreas by length and one-half of the pancreas by weight was removed. A feeding tube was inserted into plaintiff's small intestine and a drainage tube into his stomach. A drainage tube was inserted in the area of the resected pancreas.
6. Plaintiff experienced a complicated recuperation, including a second emergency surgery on 2 October 1998. The drainage tube in the area of the pancreas eroded into the stomach and had to be removed and new drains were placed in the area. The operative report states that "a small serosal tear was repaired . . . It showed that at the small bowel at the site of the jejunostomy was very kinked and the jejunostomy was also leaking little fluid. It was therefore decided to take the jejunostomy down and the ensuing hole in the small bowel was repaired . . . ." Plaintiff was treated for a prolonged period with intravenous nutritional therapy while his intestines continued to heal.
7. Plaintiff was discharged from hospital care on 6 November 1998. He remained on intravenous nutritional therapy until his intestines healed and the drains removed.
8. Plaintiff returned to work on 20 January 1999, on a limited basis of four hours per day with restrictions of lifting no more than 20 pounds. These restrictions were assigned to allow proper healing of the abdominal musculature, prevent a hernia from developing and to avoid pain from heavy lifting.
9. Plaintiff's hours of work were increased to six hours per day on 24 March 1999, with the same lifting restrictions. On 7 April 1999, plaintiff was released to work full days with a restriction of lifting no more than 75 pounds for six hours per day in his work. On 9 June 1999, plaintiff was released to work a regular eight-hour day with a permanent lifting restriction of not more than 75 pounds.
10. Plaintiff sustained a second admittedly compensable injury to his abdomen when a large board struck him on 30 September 1999, knocking him to the ground. Plaintiff was hospitalized from 30 September 1999, until 4 October 1999. He was released with no further work restrictions except the permanent lifting restriction of 75 pounds.
11. Dr. David Pearsall was qualified by stipulation of the parties as an expert in General Surgery. Based on the testimony of Dr. Pearsall and other evidence of record, plaintiff suffered injury to his pancreas, abdominal wall musculature, stomach, intestines and functional scarring and damage to his skin, all of which are important organs.
12. The pancreas is an organ in the mid-upper abdomen. The function of the pancreas is to aide in the digestive function of the body and also in the regulation of insulin. Plaintiff's hormone and enzyme production was reduced because of the truncated pancreas compared to normal, but sufficient production remained to clinically supply plaintiff's needs; however, Dr. Pearsall noted that "the blood supply and the ductal system of the pancreas can't really be restored in a way to make that part of the pancreas functional." Plaintiff does experience some digestive problems, occasionally experiencing a sensation of abdominal fullness. Dr. Pearsall documented that when he last treated plaintiff on 9 June 1999, plaintiff's weight was 124 pounds, which was less than his preinjury weight. Dr. Pearsall believes that these problems are related to both the internal scarring and possibly, in part, to the injury of his pancreas.
13. The muscles in plaintiff's abdominal wall had to be sewn together twice after his laparotomies. The abdominal wall surgeries produced some atrophy of muscle that can cause some ischemia or interference with the blood supply to the tissue. Plaintiff has lost approximately 20% of his muscle mass although none was actually removed in the surgery. Further, Dr. Pearsall noted that plaintiff would be more prone to have weakness in the area and develop a hernia if he does heavy lifting in the future.
14. Plaintiff also sustained injury to the stomach and intestines from the drainage tubes as more particularly described in Finding of Fact No. 6.
15. Plaintiff has permanent functional scarring and damage to his skin, an organ which serves to protect underlying tissues and to preserve moisture. Plaintiff's abdominal scarring is disfiguring and also constitutes damage to an important organ. The abdominal surgical scar extends from just below the breast bone to midway between the umbilicus and pubis in the midline, involving the upper two-thirds of the mid portion of the abdomen. The scar itself is raised at the top and for most of its length, and concave at the bottom. There are four additional scars on plaintiff's left side resulting from the puncture wounds made for feeding and the drainage tubes. There are also two more scars on plaintiff's right side; one approximately six inches below the collarbone in plaintiff's chest and one on the right side of plaintiff's neck which held a tube for medicine. The scarring produces minimal discomfort and physical limitation; however, it affects plaintiff's ability to bend over and tightens when he sits for prolonged periods, causing difficulty stretching. As a laborer it would be reasonably inferable that the scarring would remain covered by his work clothes most of the time. The scarring is of such magnitude that should plaintiff require a medical exam as a part of any employment process, anyone observing the scarring could postulate as to the significant internal injuries that resulted. However, an award for damage to the skin as an important organ, rather than disfigurement is the more favorable remedy for plaintiff.
17. Dr. Pearsall opined that plaintiff reached maximum medical improvement when he was released to return to work on 4 October 1999 following the second injury by accident. Dr. Pearsall has assigned permanent physical restrictions, including that plaintiff should avoid jobs with heavy lifting, i.e., more than 75 pounds on a repeated basis and he should avoid jobs that would present a danger of physical injury or impact or trauma to the stomach. The weight restriction is imposed to avoid the increased risk of hernia. The job limitations are imposed because another severe abdominal injury in the same area of his abdomen would present an increased risk of abdominal leakage from the intestine, intestinal obstruction and a risk of hernia of the abdominal wall if plaintiff required further abdominal surgery. Further, Dr. Pearsall opined that plaintiff would require annual checkups to monitor his condition and look for any significant changes in weight, abdominal pain, nausea, change in bowel habits, or sign of hernia or weakness developing in the area of the incision. Dr. Pearsall also noted that if plaintiff developed a hernia in the future which required surgery, the operation could be more difficult due to adhesions in the area of the prior surgery which causes the tissues of the abdomen to stick to each other and to the abdominal wall, making surgical entry into the area a problem. Also, according to Dr. Pearsall, "If he had a severe abdominal injury that required going back into the area where his — through his previous incision or into the intra-abdominal area where his organs were injured — his pancreas and then the stomach injury resulting from this drainage tube — he could have additional injuries in trying to separate the organs to expose the area you needed to expose. He could develop problems similar to the problem he had after his first operation, which is a fistula — an abnormal leakage from a portion of the intestine. He could develop intestinal obstruction if the intestines became kinked or stenosed."
18. Subsequent to the hearing before the Deputy Commissioner, defendant-employer submitted Stip. Exhibit #2, a revised Form 22 Wage Chart. Based on the revised Form 22, plaintiff `s average weekly wage is $301.07 producing a compensation rate of $200.72 per week.
19. Defendant-employer paid temporary total disability compensation during appropriate periods. Defendant-employer did not pay at the correct weekly compensation rate.
20. Plaintiff testified that he has been unable to earn the wages that he earned preinjury. Plaintiff's hourly wages are reduced from approximately $6.50 per hour to $5.40 per hour after his lay-off by defendant-employer, even though he is earning more actual wages because he works routinely in excess of 40 hours. In his contentions, plaintiff does not request benefits under N.C. Gen. Stat. § 97-30, but benefits under N.C. Gen. Stat. § 97-31.
21. While Plaintiff has not experienced a loss of wages, the injuries, especially relating to his abdominal wall, have resulted in restrictions to his future ability to accept employment. As a laborer, the permanent weight limitation has potentially significant impact on plaintiff's ability to accept a variety of jobs.
22. The greater weight of the evidence establishes that plaintiff will require periodic medical monitoring for his pancreas at least for the next three years. This fact implies that there is a future risk of loss of function of the pancreas. Plaintiff currently suffers from indigestion which is attributable to his abdominal wall injury and, probably, the loss of a significant portion of his pancreas.
23. Plaintiff is clearly at increased risk for future abdominal injury, and the internal surgical lesions pose risk during any future surgery.
24. Based upon an evaluation of the injury to plaintiff's skin as an important organ a reasonable amount of compensation would be $6,000.00.
25. A reasonable amount of compensation for the injury to plaintiff's pancreas is $16,000.00.
26. A reasonable amount of compensation for the injury to plaintiff's abdominal wall is $14,000.00.
27. Based upon the surgical procedures to plaintiff's stomach, including two openings and suturing required after the erosion of the drainage tubes, a reasonable amount of compensation for injury to plaintiff's stomach is $1,000.00.
28. Based upon the surgical procedures to plaintiff's intestines, including the two openings and repaired hole in plaintiff's small bowel, a reasonable amount of compensation for injury to plaintiff's intestines is $1,000.00.
29. Plaintiff has requested a separate award for injury to his skin for scarring caused by insertion of drainage tubes while hospitalized. These scars have been considered in conjunction with those of the abdomen in the award rendered.
30. Plaintiff seeks an award of a 10% penalty for defendants' willful violation of a safety regulation pursuant to N.C. Gen. Stat. § 97-12
and 19 C.F.R. § 1910.213(B)(5). Further, plaintiff contends that defendants failed to provide plaintiff with documentation of safety violations pursuant to discovery requests. These issues must be addressed at a later hearing.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage is $301.07, producing a weekly compensation rate of $200.72. N.C. Gen. Stat. § 97-2(5).
2. Plaintiff is entitled to an award of compensation for damage or loss to his important organs to include: pancreas, $16,000.00; abdominal wall, $14,000.00; skin, $6,000.00; intestines, $1,000.00; and stomach, $1,000.00. N.C. Gen. Stat. § 97-31; Aderholt v. A.M. Castle Company,137 N.C. App. 718, 529 S.E.2d 474 (2000) (Award of $20,000.00 for loss of pancreas where claimant insulin dependent and surgical scarring and lesions considered as a factor in award for intestines).
3. Plaintiff is entitled to have defendants pay for annual checkups to monitor his condition in the future and for any resulting medical treatment plaintiff may require. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's average weekly wage is $301.07, producing a weekly compensation rate of $200.72. Defendants shall pay plaintiff the difference between weekly temporary total disability compensation benefits in the amount of $200.72 and the amounts previously paid by defendant-employer for the relevant number of weeks to correct defendants' underpayment of temporary total disability compensation to plaintiff. The amount payable shall be paid in one lump sum to plaintiff, subject to the attorney fee provided for hereinafter.
2. Defendants shall pay plaintiff for damage or loss of important organs, subject to the attorney fee provided for hereinafter, as follows:
Pancreas: $16,000.00
Abdominal Wall: $14,000.00
Skin: $6,000.00
Intestines: $1,000.00
Stomach: $1,000.00
3. Defendants shall pay for past and future medical treatment related to plaintiff's injury when bills have been submitted according to procedures adopted by the Commission.
4. Plaintiff's claim for a statutory penalty pursuant to N.C. Gen. Stat. § 97-12 is RESERVED for a future hearing. This matter is remanded to Deputy Commissioner Gheen for the taking of further evidence on this issue.
5. An attorney's fee in the amount of 25% of the compensation awarded to plaintiff is approved for plaintiff's counsel of record. Defendants shall deduct the attorney fee awarded from the benefits awarded plaintiff and pay it directly to plaintiff's counsel of record.
6. Defendants shall pay the costs.
This the ___ day of April, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN