IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-243

 Filed: 5 November 2019

Wake County, No. 18CRS215701

STATE OF NORTH CAROLINA

 v.

RYAN KIRK FULLER, Defendant.

 Appeal by Defendant from order entered 23 October 2018 by the Honorable A.

Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 18

September 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Narcisa
 Woods, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Andrew
 DeSimone, for the Defendant.

 DILLON, Judge.

 Defendant Ryan Kirk Fuller pleaded guilty to one count of felony secret

peeping. During sentencing, the trial court determined that Defendant was a “danger

to the community” and, accordingly, ordered that he register as a sex offender for

thirty (30) years pursuant to N.C. Gen. Stat. § 14-202(l). Defendant appeals from this

portion of the order. We affirm.

 I. Factual and Procedural Background
 STATE V. FULLER

 Opinion of the Court

 The victim, Mrs. Smith1, and her husband lived with their teenage son in their

home in Apex. Defendant, a long-time friend of the Smiths, lived in the home as well.

 On 17 August 2018, Mr. Smith walked into his living room and observed a

video of his wife undressing in their bedroom playing on the television. Mr. Smith

was confused as to how the image was appearing on his television. Mr. Smith then

saw Defendant in the living room watching the video and immediately contacted the

police.

 Defendant soon admitted to the following: He was responsible for the video

and other recordings of Mrs. Smith made while she was either in her bedroom or

bathroom. He had developed romantic feelings for Mrs. Smith, leading him to

purchase and install a phone charger with a secret camera to record her when she

was in her bathroom and bedroom. The camera activated via a motion sensor and

had the capability, not only to record and store, but also to cast a live feed. He had

been recording Mrs. Smith for more than two months when Mr. Smith caught him.

And he had sorted and downloaded approximately fifty (50) images of Mrs. Smith

from his recordings onto his personal devices.

 Defendant was indicted on three counts of secret peeping, pursuant to N.C.

Gen. Stat. § 14-202. Defendant pleaded guilty to one count in exchange for dismissal

 1 Pseudonyms are used to protect the victims’ identity.

 -2-
 STATE V. FULLER

 Opinion of the Court

of the two other counts. The trial court accepted his plea and sentenced Defendant

to a suspended prison term.

 The trial court then heard arguments on whether to require Defendant to

register as a sex offender, as registration is not mandatory for those convicted under

Section 14-202, but rather is appropriate only if the trial court makes certain

findings. After hearing arguments from counsel, the trial court ordered Defendant to

register as a sex offender. Defendant timely appealed.

 II. Analysis

 Defendant argues that the trial court erred in requiring him to register as a

sex offender. We disagree.

 When a person is convicted for secretly peeping pursuant to Section 14-202(d)

of our General Statutes, registration as a sex offender is not automatically required.

N.C. Gen. Stat. § 14-202 (2018). Rather, the General Assembly directs that “the

sentencing court shall consider [(1)] whether the person is a danger to the community

and [(2)] whether requiring the person to register as a sex offender pursuant to Article

27A of this Chapter would further the purposes of that Article as stated in G.S. 14-

208.5.” N.C. Gen. Stat. § 14-202(l).

 -3-
 STATE V. FULLER

 Opinion of the Court

 In his appeal, Defendant argues that the trial court should not have ordered

registration as there was no evidence that he was “a danger to the community.”2

 Our General Assembly has not defined “danger to the community,” but it could

be argued that a normal reading of the phrase would include someone who is willing

and capable to violate a position of trust to install sophisticated, hard-to-detect

devices to record his victim in intimate settings, as Defendant did in this case.

 There is limited, controlling jurisprudence on who constitutes a “danger to the

community” under Section 14-202(l). In support of his argument, Defendant relies

primarily on two cases; namely, the one published opinion from our Court where this

issue was squarely addressed, State v. Pell, 211 N.C. App. 376, 712 S.E.2d 189 (2011),

and an unpublished case decided by our Court seven years later, State v. Guerrette,

818 S.E.2d 648, 2018 N.C. App. LEXIS 967 (N.C. Ct. App. Oct. 2, 2018). Neither party

has cited to any other North Carolina opinion, nor has our research uncovered any,

where the issue before our Court or our Supreme Court was whether the trial court

erred in ordering registration for a defendant convicted pursuant to Section 14-202.

In any event, as Pell is a published decision, we are bound by the holdings therein.

See In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

 2 Defendant makes no clear argument as to the second required finding, that requiring him to
register would not serve the purposes set forth in N.C. Gen. Stat. § 14-208.5. See N.C. Gen. Stat. § 14-
202(l). We, though, conclude that requiring Defendant to register would serve those statutory
purposes.

 -4-
 STATE V. FULLER

 Opinion of the Court

 In Pell, our Court defined one who is a “danger to the community” as a

defendant who “pose[s] a risk of engaging in sex offenses following release from

incarceration or commitment.” Pell, 211 N.C. App. at 379, 712 S.E.2d at 191.

 Pell then suggested that whether one is a “danger to the community” is a mixed

question of fact and law, Id. at 380, 712 S.E.2d at 192, and that our review on appeal

is as follows:

 Whether a trial court finds that a defendant poses a risk of
 engaging in sex offenses following release from
 incarceration [and is, therefore, a “danger to the
 community”] will be based upon a review of the
 surrounding factual circumstances. Accordingly, [our]
 Court will review the trial court’s findings to ensure that
 they are supported by competent evidence, and we review the
 conclusions of law to ensure that they reflect a correct
 application of law to the facts.

Id. at 380-81, 712 S.E.2d at 192 (emphasis added).3

 Here, the trial court determined that Defendant posed a risk of committing

sexual offenses – and therefore was a danger to the community – based on its findings

that (1) Defendant made the recordings “over a long period of time[;]” (2) Defendant

 3We note that in another published opinion, our Court suggested in dicta that our standard of
review is for an “abuse of discretion.” State v. Mastor, 243 N.C. App. 476, 482, 777 S.E.2d 516, 520
(2015). Indeed, since we must consider the “danger to the community” determination, in part, as a
question of fact, it could be argued that we are to afford the trial court some discretion in making that
determination. That is, if the determination is not a pure question of law, then it is possible that in a
close case, one judge could determine certain findings support a “danger to the community”
determination and another judge could determine that these same findings do not support a “danger
to the community” determination.
 In any case, we are bound by the standard of review as set forth in Pell, and we apply that
standard in this case.

 -5-
 STATE V. FULLER

 Opinion of the Court

used a sophisticated method of recording Mrs. Smith by use of a hidden camera; (3)

Defendant invaded Mrs. Smith’s private spaces on multiple occasions to move his

camera back and forth between Mrs. Smith’s bedroom and her bathroom when she

was not present; (4) Defendant stored his recordings to allow him to view them at any

time; and (5) Defendant would have no difficulty in repeating his crime as the

recording devices were easily obtainable and inexpensive.

 We conclude that these findings are supported by competent evidence. After

he was caught in the act, Defendant essentially admitted to these findings and has

not challenged any of them on appeal.

 We further conclude that these findings and the uncontradicted evidence

before the trial court support the determination that Defendant posed a risk of sexual

offenses in the future to warrant imposition of the registration requirement.4 Indeed,

the evidence shows that Defendant is capable of taking advantage of long-time, close

friends who trusted him to live in their home with them and their teenage son. They

show that he is willing and able to devise and execute a scheme using sophisticated

 4 We note that the standard used by our Court in Pell, that registration should only be for
those who “pose a risk of engaging in sex offenses [in the future],” was not clear on how much of a risk
the trial court must determine a defendant to be in order to impose the registration requirement. Pell,
211 N.C. App. at 379, 712 S.E.2d at 191. Clearly, the trial court need not determine that the risk of
recidivism is an absolute certainty. But the trial court must do more than rely on a determination
that there is always a slight risk with every defendant to recidivate. We conclude that the trial court’s
findings must demonstrate that the level of risk is such that there is a reasonable likelihood that the
defendant in question will recidivate. See id. at 382, 712 S.E.2d at 193 (stating that the State’s
evidence was insufficient to warrant the defendant’s registration as a sex offender because the
evidence “offered very little . . . concerning [the d]efendant’s likelihood of recidivism”) (emphasis
added).

 -6-
 STATE V. FULLER

 Opinion of the Court

means to commit his crime in a way that would likely be undetected by his victim.

They show that he is willing and able to put forth effort over a period of time to further

his crime, in that he repeatedly invaded the personal space of his victim to re-position

his camera. They show that he is willing and able to commit his crime in a manner

which could cause greater harm to his victim that that suffered by typical victims of

this crime: where the harm for most victims of peeping is the knowledge that they

have been spied upon, here Defendant made permanent recordings which could be

viewed numerous times by anyone in the future. They show that he could commit

the crime again in the future with ease. And they show a lack of real remorse in that

he only confessed when he was caught red-handed by his victim’s husband.

 Defendant argues that Pell compels a reversal since the trial court largely

relied on the facts of his crime to determine whether he posed a risk of reoffending.

We do not read Pell so narrowly. Specifically, in Pell, the State’s evidence showed

that the defendant was only a low to moderate risk and was moving in the right

direction and that his psychiatric issues, which were a cause of his criminal behavior,

were in remission. Id. at 381, 712 S.E.2d at 192-93. The State in that case, though,

had relied on victim impact statements, which “all tended to address the manner in

which [the d]efendant committed his past offenses and the effect his actions had on

each of [the victims’] lives.” Id. at 382, 712 S.E.2d at 193. The Pell Court rejected

the State’s argument that these statements were sufficient, holding that the State’s

 -7-
 STATE V. FULLER

 Opinion of the Court

evidence “offered very little in the way of predictive statements concerning [the

d]efendant’s likelihood of recidivism.” Id.

 But, in so holding, the Court did not categorically reject the notion that a trial

court could rely largely on the manner in which a defendant goes about committing

his crime in determining that the defendant is a “danger to the community.” Rather,

the Pell Court held that “the victim impact statements [describing the manner in

which the defendant had committed his crimes] in this case are insufficient to support

the trial court’s finding that [d]efendant represented ‘a danger to the community.’ ”

Id. (emphasis added).

 Here, Defendant’s manner of committing his crime was much more

sophisticated and stealthier than that used by the defendant in Pell. That is,

Defendant committed his crime in a way that was almost undetectable. Also, the

findings here show that Defendant is willing to take advantage of even his close

friends who had placed a great deal of trust in him. And, unlike Pell, there is no

indication here that a cause of Defendant’s behavior was in remission or that he was

moving in the right direction. Indeed, Defendant chose his victim merely because he

had a crush on her; and there is no indication that he will not develop a crush on a

wife or girlfriend of a close friend in the future and, thereby, be a danger to that

member of the community.

 III. Conclusion

 -8-
 STATE V. FULLER

 Opinion of the Court

 We conclude that the trial court’s findings are supported by the evidence and

that these findings support the trial court’s imposition of the sex offender registration

requirement in this case.

 AFFIRMED.

 Judge TYSON concurs, writing separately.

 Judge BROOK dissents.

 -9-
 No. COA19-243 – State v. Fuller

 TYSON, Judge, concurring.

 The majority’s opinion correctly affirms the trial court’s order for Defendant to

register as a sex offender for thirty years, with a provision for Defendant, if he is not

a recidivist, to petition after ten years to be removed from the registry. I vote to

affirm the trial court’s order. I write separately to assert and show the trial court’s

ruling is also properly affirmed under a less demanding abuse of discretion standard

of review. State v. Mastor, 243 N.C. App. 476, 482, 777 S.E.2d 516, 520 (2015).

 I. Background

 Defendant agreed in his plea bargain agreement that “sex offender registration

shall be determined by the court.” The trial court included and read that provision

aloud in its plea colloquy with Defendant, which Defendant affirmed on the record

and in open court as being a part of his full plea agreement.

 The trial court made several findings of fact after hearing the parties’

arguments on sex offender registration:

 In this particular case it seems that there were recordings
 made over a long period of time. The fact that he only used
 one device as opposed to two and to move it place to place
 is to me more concerning than if he had had two devices,
 because he had to make – each time he had to move the
 device, he had to do an intentional act. You know, the
 statement that this occurred because he was having
 feelings for the victim, the – and the setup was apparently
 much more sophisticated than [Guerrette] where someone
 was just in a woman’s bathroom with a cell phone. By
 having this secret device, moving – moving the secret
 STATE V. FULLER

 TYSON, J., concurring

 device from room to room, the manner in which it was
 stored, and the fact of the – as you said, anybody could get
 anything on the internet, so it would make it easy for him
 to buy similar devices off the internet once he’s – just make
 it easier for him to buy these devices off the internet, Court
 finds that he would be a danger to the community and the
 purpose of the Registry Act would be served by requiring
 him to register for a period of 30 years. If after 10 years he
 has a clean record, certainly can petition to get off.

 II. Standard of Review

 The majority’s opinion asserts “this Court will review the trial court’s findings

to ensure that they are supported by competent evidence, and we review the

conclusions of law to ensure that they reflect a correct application of law to the facts.”

State v. Pell, 211 N.C. App. 376, 381, 712 S.E.2d 189, 192 (2011) (citation omitted).

While this standard of review requires a higher threshold for the State than an abuse

of discretion, the trial court’s ruling is also properly sustained and affirmed under an

abuse of discretion standard of review.

 Based upon Defendant’s express agreement in his plea bargain that “sex

offender registration shall be determined by the court,” the trial court’s ruling is

properly reviewed for abuse of discretion. The defendant’s plea agreement in Pell did

not leave the issue of sex offender registration within the trial court’s discretion. Id.

at 376, 712 S.E.2d at 190. Here, Defendant acknowledged in his plea agreement, and

again in open court, for the trial court to exercise its discretion to determine whether

to order and the extent of Defendant’s sex offender registration.

 2
 STATE V. FULLER

 TYSON, J., concurring

 It is well established that where matters are left to the
 discretion of the trial court, appellate review is limited to a
 determination of whether there was a clear abuse of
 discretion. A trial court may be reversed for abuse of
 discretion only upon a showing that its actions are
 manifestly unsupported by reason. A ruling committed to a
 trial court’s discretion is to be accorded great deference and
 will be upset only upon a showing that it was so arbitrary
 that it could not have been the result of a reasoned
 decision.

White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985) (emphasis supplied)

(citations omitted).

 A proper review of the trial court’s findings and registration order is for abuse

of that discretion. Id. The ruling of the trial court is presumed to be correct. Hogsed

v. Pearlman, 213 N.C. 240, 243, 195 S.E. 789, 791 (1938). Defendant carries the

burden to show prejudicial error on appeal. N.C. Gen. Stat. § 15A-1443(a) (2017).

Defendant acknowledged in his plea agreement his sex offender registration “shall be

determined by” and within the discretion of the trial court. Defendant received the

full benefit of his plea bargain, had multiple other charges dismissed, and avoided an

active prison term and potential consecutive sentences.

 III. Analysis

 As noted in the majority’s opinion, the statute provides and the parties agree

Defendant pled guilty to an offense, which qualifies him as eligible to be registered

as a sex offender. N.C. Gen. Stat. § 14-202(l) (2017). For a defendant to be required

to register, a trial court must first determine: “(1) the defendant is a ‘danger to the

 3
 STATE V. FULLER

 TYSON, J., concurring

community;’ and (2) the defendant’s registration would further the purpose” of the

Registry Act. Pell, 211 N.C. App. at 379, 712 S.E.2d at 191. The majority’s opinion

correctly notes Defendant fails to challenge or address this second factor, which the

trial court properly found in this case. Defendant’s argument rests solely upon the

trial court’s finding Defendant is a “danger to the community” under Pell’s less

deferential standard of review.

 Under Pell, “ ‘danger to the community’ refers to those sex offenders who pose

a risk of engaging in sex offenses following release from incarceration or

commitment.” Id. The evidence brought forward by the State in Pell, which “tended

to address the manner in which Defendant committed his past offenses . . . . offered

very little in the way of predictive statements concerning Defendant’s likelihood of

recidivism.” Id. at 382, 712 S.E.2d at 193. Expert testimony in Pell consisted of “that

Defendant represented a low to moderate risk of re-offending,” “letters submitted by

Defendant’s psychiatrist and counselor,” and “statements made by several of

Defendant’s victims.” Id. at 381-82, 712 S.E.2d at 193.

 Defendant argues the State has not brought forward evidence establishing the

requisite likelihood of his recidivism. Even under Pell’s requirement for the State to

show likelihood of recidivism with evidence beyond the manner of commission of the

offense, Defendant cannot show the trial court abused its discretion, which he

specifically agreed for the trial court to exercise in his plea bargain.

 4
 STATE V. FULLER

 TYSON, J., concurring

 Because Defendant “only used one device as opposed to two,” the trial court

found “each time he had to move the device [between the victim’s bedroom and

bathroom], he had to do an intentional act.” The court further found the Defendant

had used a “secret device.” While the number and surreptitious and concealed nature

of devices used, or the multiple acts of moving the device between the victim’s

bedroom and bathroom, may arguably be manner-of-commission evidence, the trial

court’s finding of Defendant’s intentionality is not and supports the trial court’s

ruling.

 Defendant’s claim his secret and repetitive acts “occurred because he was

having feelings for the victim,” also suggests Defendant’s motive for his acts, which

is separate and distinct from his manner of committing the crimes. Defendant grossly

violated his relationship and position of trust and confidence as a close friend and

guest in the Smiths’ home to gain access to their most private and personal areas,

where individuals rightfully expect the highest levels of privacy to disrobe, bathe, and

engage in intimate bodily functions.

 His multiple violations occurred over several months. Defendant sorted and

stored over fifty images of the victim in both moving and still media, to allow him to

review his “favorites” repeatedly and potentially share them with others.

 Defendant’s egregious violations of the victim’s trust to gain access, his

repeated invasions of the Smiths’ most intimate private living areas over many

 5
 STATE V. FULLER

 TYSON, J., concurring

months, his sorting and storing the images, his intent, motive, and future access to

the internet support the conclusion Defendant is a likely future recidivist and a

danger to the community.

 The trial court’s “danger to the community” conclusion requires the court to

look at the evidence and factually determine likelihood of recidivism as a question of

fact. As a result, and as noted in the majority’s opinion, the “danger to the

community” determination is not entirely a question of law. As a question of fact, it

is possible that one judge could review the evidence to support a finding that the

defendant is a likely future recidivist and a danger to the community, whereas the

same or another judge making these same findings about a different defendant could

find a second defendant is not a danger to the community. See Mastor, 243 N.C. App.

at 482, 777 S.E.2d at 520. Both conclusions are clearly within the trial judge’s

permitted range of discretion. The trial court clearly reviewed the undisputed

evidence and articulated a reasoned decision within its discretion based upon the

facts here.

 The trial court also exercised its discretion of lenity and ruled, “[i]f after 10

years he has a clean record, [he] certainly can petition to get off” the registry. If

Defendant is not a recidivist, as he claims, after ten years he can petition to be

removed from the registry. Defendant has failed to carry his burden on appeal that

the trial court’s agreed-upon discretionary ruling for Defendant to register as a sex

 6
 STATE V. FULLER

 TYSON, J., concurring

offender is manifestly unsupported by reason, or so arbitrary that it could not have

been the result of a reasoned decision. White, 312 N.C. at 777, 324 S.E.2d at 833.

 The trial court’s findings and conclusions also meet the more strict Pell

standard of review asserted in the majority’s opinion. The trial court’s ruling comes

before us with the presumption of being correct. Defendant cannot carry his burden

to show any error or that any error was prejudicial to his agreed-upon plea

agreement. Defendant’s appeal is wholly frivolous.

 IV. Conclusion

 The trial court’s finding Defendant was a danger to the community is not

manifestly unsupported by reason and its ruling for Defendant to register as a sex

offender is not shown to be an abuse of discretion. The trial court also properly found

and concluded “the purpose of the Registry Act would be served by requiring him to

register.” These findings fully comply with the requirements of the statute and are

supported by competent evidence. The trial court’s conclusions are supported by

unchallenged findings of fact.

 The majority’s opinion uses a competent evidence standard of review from Pell

to affirm the trial court’s order. Given the terms of Defendant’s plea bargain, the

trial court’s order is also properly affirmed under the less demanding abuse of

discretion standard. I concur with the majority’s opinion and vote to affirm the trial

court’s order.

 7
 No. COA19-243 – State v. Fuller

 BROOK, Judge, dissenting.

 I respectfully dissent. The governing statutory regime and our binding

precedent require reversal of the trial court’s order.

 The Statutory Regime and Our Case Law

 Our General Assembly has outlined a variety of offenses in N.C. Gen. Stat. §

14-208.6(4)(a) that constitute “reportable offenses” requiring sex offender registration

upon conviction. A conviction for secret peeping under N.C. Gen. Stat. § 14-202(d) is

not so designated. Instead of automatic registration, a trial court can order an

individual so convicted to register as a sex offender upon finding “that the person is

a danger to the community.” N.C. Gen. Stat. § 14-202(l) (2017).5 In assessing the

trial court’s imposition of sex offender registration, this Court reviews the trial court’s

findings to ensure that they are supported by competent evidence and reviews the

conclusions of law to ensure they reflect a correct application of law to the facts. State

v. Pell, 211 N.C. App. 376, 380-81, 712 S.E.2d 189, 192 (2011) (citing State v. Kilby,

198 N.C. App. 363, 367, 679 S.E.2d 430, 432 (2009)).

 Our Court’s decision in Pell provides a roadmap for how we assess whether a

trial court rightly concluded an offender is a danger to the community such that sex

 5 The provision in question also requires a finding that registration would further the purposes
of the registration program. Id. Defendant’s argument focuses on the “danger to the community”
finding; thus, my analysis is similarly tailored.
 STATE V. FULLER

 BROOK, J., dissenting

offender registration is warranted. “The phrase ‘danger to the community’ is not

defined” by the statute. Pell, 211 N.C. App. at 379, 712 S.E.2d at 191. Pell reasoned

an offender is a “danger to the community” if he “pose[s] a risk of engaging in sex

offenses following release from incarceration.” Id. at 379, 712 S.E.2d at 191.

Accordingly, our Court did not focus on “the manner in which Defendant committed

his past offenses” as such evidence “offered very little in the way of predictive

statements concerning Defendant’s likelihood of recidivism.” Id. at 381-82, 712

S.E.2d at 192-93. We instead looked forward, focusing on risk assessment evidence

showing that the defendant posed a low to moderate risk of re-offending and

testimony from the defendant’s psychiatrist and counselor assessing his major

depression, alcohol abuse, and paraphilia to be in remission. Id. at 381, 712 S.E.2d

at 193. Based on the evidence heard by the trial court, we held that the State had

not shown the defendant “represented a danger to the community” and reversed the

trial court’s imposition of registration. Id. at 382, 712 S.E.2d at 193.

 Following Pell’s guidance, this Court reversed an imposition of sex offender

registration in State v. Guerrette, ___ N.C. App. ___, 818 S.E.2d 648, 2018 WL

4702230 (2018) (unpublished). On 4 July 2016, the defendant entered a women’s

restroom at Carolina Beach and used his cell phone to film six women for about eight

minutes. Id. The defendant pleaded guilty to two counts of secret peeping using a

photographic device, two counts of creating a photographic image while secretly

 2
 STATE V. FULLER

 BROOK, J., dissenting

peeping, and two counts of knowingly possessing a photographic image created

through secretly peeping, and attaining the status of habitual felon. Id. at *2.

 The trial court imposed a registration requirement, and this Court reversed.

Id. at *10. To show the defendant was a danger to the community, the State argued

that the defendant’s 20 prior felony convictions, mental health issues, and current

convictions supported the requisite “affirmative finding” that the defendant was a

danger to the community. Id. at *2-3. We rejected each of these arguments in turn.

 First, the “defendant’s non-violent, non-sexual prior convictions do not indicate

an increased risk he would commit another sexual offense.” Id. at *7.

 Second, the “[d]efendant’s mental health issues may show he is a danger to

the community if the State is able to show that those issues led [the] [d]efendant to

have an increased risk of engaging in sex offenses after incarceration.” Id. at *8

(emphasis in original). The State had offered no evidence connecting the defendant’s

diagnoses of schizophrenia, schizoaffective disorder, bipolar tied to social anxiety

disorder, panic disorder, and post-traumatic stress disorder to an increased risk of

committing sex offenses. Id.

 Finally, as noted above, a conviction under N.C. Gen. Stat. §§ 14-202(d) does

not constitute a “reportable offense” requiring registration. “[R]ather[,] an additional

showing is required that a defendant is a danger to the community.” Id. at *9. Our

Court reasoned “[i]f the General Assembly had intended that a conviction for peeping

 3
 STATE V. FULLER

 BROOK, J., dissenting

– in and of itself – would show that a defendant was a danger to the community, it

would have included such offense in N.C.G.S. § 14-208.6(4)(a)[,]” amongst offenses

requiring registration. Id.

 Assessing the Facts of the Current Controversy

 It bears repeating that on appeal, this Court “reviews the conclusions of law to

ensure they reflect a correct application of law to the facts.” Pell, 211 N.C. App. at

380-81, 712 S.E.2d at 192 (emphasis added). To an even greater extent than Pell or

Guerrette, the trial court here focused its “danger to the community” analysis on how

the crimes were committed. In rendering its order, the trial court first noted the

window in which the recordings were made – from June through mid-August 2018.

It reasoned that Defendant’s use of one device was more troubling than if he had used

multiple devices as “each time he . . . move[d] the device” between the bathroom and

bedroom “he had to do an intentional act.” The trial court then observed the setup

was “more sophisticated than [Guerrette] where someone was just in a woman’s

bathroom with a cell phone.” Finally, the court stated, “anybody could get anything

on the [I]nternet” and presumably it would be “easy for [Defendant] to buy similar

devices off the [I]nternet.”

 These facts “address the manner in which Defendant committed his past

offenses[,]” but “offer very little in the way of predictive [evidence] concerning

Defendant’s likelihood of recidivism.” Pell, 211 N.C. App. at 382, 712 S.E.2d at 193.

 4
 STATE V. FULLER

 BROOK, J., dissenting

The fact that Defendant moved the camera in question, the sophistication of the

technology employed, and its easy availability—none of this aids in answering the

critical question of whether Defendant is likely to re-offend. See id. at 381, 712 S.E.2d

at 192. In a similar vein, the trial court focused on the window in which filming

occurred—three months—in imposing registration. Again, the connection of this fact

to the likelihood of future recidivism is tenuous at best.6 And simply convicting

Defendant of the offense of secret peeping, of course, does not prove the requisite

danger to the community. See Guerrette, at *9.

 The evidence of Defendant’s likelihood of recidivism, the lodestar of the

requisite danger to the community analysis, borders on non-existent here. While a

risk assessment tool may have provided some insight into Defendant’s likelihood to

re-offend, see Guerrette, at *6 (“[T]he absence of a risk assessment or expert testimony

fails to support that Defendant poses a risk of committing sex offenses upon release

from incarceration.”), the trial court here refused Defendant’s request for a Static 99

assessment. And the scant record evidence that is arguably pertinent tends to point

 6 A review of the record in Pell shows the grand jury returned 16 bills of indictment against
the defendant for secretly peeping on his employees and neighbor for nearly 16 years. R. at 46, State
v. Pell, 211 N.C. App. 376, 712 S.E.2d 189 (2011) (COA10-415). The defendant pleaded guilty to eight
counts of secret peeping spanning four years. R. at 52, State v. Pell, 211 N.C. App. 376, 712 S.E.2d 189
(2011) (COA10-415). Despite this, this Court held the record evidence did not support the imposition
of sex offender registration given the defendant’s evidence showed he was not likely to recidivate and
thus was not a “danger to the community.” See Pell, 211 N.C. App. at 381-82, 712 S.E.2d at 192-93.

 5
 STATE V. FULLER

 BROOK, J., dissenting

in the opposite direction: for example, Defendant has no prior convictions, no history

of mental health or substance abuse issues, and cooperated with law enforcement.

 The majority and concurring opinions recognize the trial court’s cardinal

misstep and then promptly repeat it. Both opinions nod toward Pell’s admonition

that the manner of the offense “offer[s] very little in the way of predictive statements

concerning the likelihood of recidivism.” Supra at ___; supra at ___ (Tyson, J.,

concurring) (noting “Pell’s requirement for the State [to] show likelihood of recidivism

with evidence beyond the manner of commission of offense”). And both then flout this

governing precedent by focusing their inquiry on the nature of the offense at hand.

Supra at ___; supra at ___ (Tyson, J., concurring). Even efforts at distinction are

merely return trips to forbidden ground. Supra at ___ (“Here, Defendant’s manner of

committing his crime was much more sophisticated and stealthier than in Pell.”).

 More than failing to abide by the statutory regime and case law, the majority

inverts the approach of the controlling authority. Where both call for evidence that

a defendant is a danger to the community beyond the simple fact of conviction, the

majority repeatedly points to the absence of evidence (even when Defendant sought

to fill the vacuum). For example, while noting the defendant in Pell “was only a low

to moderate risk” for recidivism according to test results, the majority fails to mention

that the trial court rejected Defendant’s request for such testing in this case. Supra

at ___. Relatedly, the majority closes by noting “there is no indication that

 6
 STATE V. FULLER

 BROOK, J., dissenting

[Defendant] will not develop a crush on a wife or girlfriend of a close friend in the

future.” Supra at ___. One can abhor Defendant’s criminal betrayal while also

concluding that such reasoning stands our precedent’s inquiry into “predictive

[evidence] concerning Defendant’s likelihood of recidivism” on its head. Pell, 211 N.C.

App. at 382, 712 S.E.2d at 193.

 Conclusion

 In many ways, this case is quite distinct from Pell and Guerette. The State

could point to four years of offenses in Pell; the offenses at issue here span less than

three months. The State in Guerette highlighted defendant’s criminal record and

history of mental health challenges; there is no similar backstory here. But these

cases are similar in the most salient aspect: the State has not brought forward

evidence establishing the requisite likelihood of future offense. In the absence of such

a showing, I would reverse the trial court’s order requiring Defendant to register as

a sex offender and remand for resentencing.

 With respect, I dissent.

 7