LAWRENCE ANDERSON WHITE v. JEAN MALCOLM WHITE

No. 559PA83

(Filed 30 January 1985)

1. **Divorce and Alimony § 30— equitable distribution—legislative policy favoring equal division of property—standard of review**

Marital property must be divided equally if no evidence is admitted tending to show that an equal division would be inequitable; however, when such evidence is admitted, the trial court must exercise its discretion in assigning the weight each factor should receive in any given case and in making an equitable division. Appellate review is limited to a determination of whether there was a clear abuse of discretion. G.S. 50-20.

2. **Divorce and Alimony § 21.9— equitable distribution—findings supported equal division of property**

In an action for divorce and equitable distribution of property, the court did not abuse its discretion by concluding that each party was entitled to an equal share of the marital property where the court found that defendant wife had contributed non-financial services and wages to the marriage which exceeded in value the total fair market value of her interest in the jointly held

White v. White

property and her separately held property, that plaintiff husband had been employed during the early part of the marriage, that his present salary was less than defendant's, and that defendant's vested pension rights exceeded plaintiff's. A specific statement that the distribution ordered was equitable was not required. G.S. 50-20.

Justice VAUGHN took no part in the consideration or decision of this case.

ON discretionary review of the decision of the Court of Appeals, 64 N.C. App. 432, 308 S.E. 2d 68 (1983), affirming the order entered by *Judge Narley Cashwell* June 9, 1982 in District Court, WAKE County. Heard in the Supreme Court November 13, 1984.

*James S. Warren for plaintiff appellee.*

*Kirby, Wallace, Creech, Sarda and Zaytoun, by John R. Wallace, for defendant appellant.*

MITCHELL, Justice.

This case presents fundamental questions arising under the Equitable Distribution Act concerning the proper distribution of marital property when a couple is divorced.

The litigants in this action were married on September 8, 1951. In July 1980, the plaintiff husband abandoned the home of the parties. On November 23, 1981, he filed an action for divorce based on one year's separation. The defendant wife counterclaimed for equitable distribution of the marital property under N.C.G.S. 50-20. A hearing was held at the April 6, 1982 Session of District Court, Wake County on all issues arising from the pleadings. The trial court entered a judgment granting divorce absolute on April 6, 1982. In a separate order entered June 8, 1982, the trial court resolved the issues arising from the defendant wife's counterclaim for equitable distribution. That order of June 8 is the subject of this appeal.

With regard to the wife's claim for equitable distribution the trial court made findings of fact which may be summarized as follows:

Prior to the marriage, the plaintiff had received a Bachelor of Science degree in agricultural engineering from North Carolina State University. The defendant had obtained her certification as a registered nurse and was working at Rex Hospital in Raleigh at the time of the marriage.

The plaintiff was employed as a salesman of heavy equipment and was transferred to Charlotte shortly after the marriage. The defendant gave up her job and moved to Charlotte with him. Soon thereafter, she became pregnant with their first child which was born in September 1952. A second child was born of the marriage in February 1954. The parties agreed that the defendant wife would not pursue a nursing career, but would instead devote her time and energy to the rearing of the children. During the first twenty-four years of the marriage, the plaintiff husband traveled extensively in connection with his sales job. During this period the defendant attended to the needs of the children and managed the home. She also contributed substantially to the career of her husband by acquiescing in several job transfers that he made. The defendant wife also worked part time, often at night and on weekends, in various communities in which the family resided. In June 1970, the defendant began work full time as an Occupational Health Nurse with the Postal Service. She has continued in that position to the present.

During the course of the marriage, the plaintiff invested in securities in his separate name. He purchased the majority of his holdings during the early 1970's. He was employed through 1975, but from 1975 until 1978 he had no full-time employment. During this period the defendant's earnings and contributions to the home were $63,471, or more than three times the $19,505 earned and contributed by the plaintiff husband. Her earnings permitted him to devote his full attention to the management of his individual investments.

In 1978, the plaintiff husband obtained a position with the Postal Service and is presently so employed. He is 55, earns $20,500 per year and has the opportunity to earn salary increases in his present employment. The defendant wife is 52, earns $23,000 per year and has reached the maximum salary level which can be earned in her present employment. He has bursitis. She suffers from arthritis and osteoporosis and has had periods of depression which on two occasions interfered with her work. He has vested pension rights of $3,300. She has vested pension rights of $8,900. The plaintiff husband also has prospects of inheriting a substantial estate.

The parties, either individually or jointly, owned the following marital property: (1) a house, lot and greenhouse valued at

$57,900; (2) automobiles valued at $2,500; (3) securities valued at $72,408.86; (4) banking and savings accounts in the amount of $1,478; and (5) furniture and household goods valued at $1,000. Since 1975 the defendant wife has made the regular mortgage payments on the house. The trial court also found that the defendant had contributed services as a spouse, mother, homemaker and wage earner which exceeded in value the total fair market value of her interest in the jointly held property and her separately held property.

The trial court concluded that the contributions of the parties entitled each to an equal share of the marital property and ordered the property distributed accordingly. The order was affirmed by the Court of Appeals. This Court allowed the defendant wife's petition for discretionary review.

The defendant wife contends that the trial court erred in ordering an equal division of the marital property. She argues that her contributions to the marital estate vastly exceeded those of her husband, and that she should be awarded a greater share of the property.

This case involves the Equitable Distribution Act. 1981 N.C. Sess. Laws, ch. 815. Though touched upon in *Mims v. Mims*, 305 N.C. 41, 286 S.E. 2d 779 (1982), this is our first opportunity to expressly address the Act. Therefore, it is appropriate to briefly examine the purposes of the Act.

The theory of husband-wife unity which existed at early common law gave the wife virtually no legal status or property rights. Upon marriage the wife's personal property vested absolutely in her husband. When the wife brought any real property into the marriage, the husband became seized of an estate in it which gave him the right of possession and control. He could sell and convey the land for a period not exceeding the coverture, and he was entitled to rents received from her real property. Though the wife retained her interest in the real property, she could not convey during coverture even with the consent of the husband. Also, the wife's personal estate and the husband's interest in her real property were subject to levy under execution for his debts. 2 R. Lee, *N.C. Family Law* § 107 (4th ed. 1980) [hereinafter cited as *Lee*].

In the 1830's and 1840's the North Carolina General Assembly enacted several statutes which accorded married women greater control over their property. Under these provisions a conveyance of the wife's land was required to be jointly executed by the husband and wife, and the wife was privately questioned as to the voluntary nature of the transfer. 1 Rev. Stat. 1836-37, ch. 37, § 9; Rev. Code 1854, ch. 37, § 8. The wife was also permitted to have and retain property acquired by her following a divorce. 1 Rev. Stat. 1836-37, ch. 39, § 11; Rev. Code 1854, ch. 39, § 13. Another statutory provision prohibited the husband from leasing the wife's real property for a term of years or for life without her joining in the lease following a privy examination. 1 Rev. Stat. 1836-37, ch. 43, § 9. A fourth provision prevented the sale under execution of the husband's interest in his wife's real property. Rev. Code 1854, ch. 56, § 1. These enactments paved the way for a constitutional provision which established a woman's right to keep as her separate estate all property she brought into the marriage or acquired during coverture and which exempted her separate estate from liability for the husband's debts. N.C. Const. of 1868, art. X, § 6 (now N.C. Const. art. X, § 4). Chapter 52 of the North Carolina General Statutes and N.C.G.S. 39-7 *et seq.* carry forward the intent of those early statutory provisions.

Despite the enlightened views evidenced by these enactments, our courts continued to adhere to the common law rules based on title when confronted with the task of dividing marital property upon divorce. *See* 2 *Lee,* §§ 107-27; L. Kelso, *North Carolina Divorce, Alimony and Child Custody,* § 8-1 (1983); *Survey of Developments In North Carolina Law,* 60 N.C. L. Rev. 1159 (1982); Marschall, *Proposed Reforms In North Carolina Divorce Law,* 8 N.C. Cent. L.J. 35 (1976). The allocation of marital property to the party who held title thereto tended to reward the spouse directly responsible for its acquisition, while overlooking the contribution of the homemaking spouse. L. Golden, *Equitable Distribution of Property,* § 1.03 (1983) [hereinafter cited as *Golden*]. Though the title theory approach made property distribution relatively simple, the result was often harsh for the homemaker. *See e.g., Leatherman v. Leatherman,* 297 N.C. 618, 256 S.E. 2d 793 (1979).

In 1981, the General Assembly sought to alleviate the unfairness of the common law rule by enacting our Equitable Distri-

bution Act which is now codified as N.C.G.S. 50-20 and 21. As early as the 1930's, a third of the states had some form of equitable distribution. By the early 1980's, forty-one states and the District of Columbia had adopted the concept. *Golden*, § 1.02. Equitable distribution reflects the idea that marriage is a partnership enterprise to which both spouses make vital contributions and which entitles the homemaker spouse to a share of the property acquired during the relationship. *See In Re Marriage of Komnick*, 84 Ill. 2d 89, 417 N.E. 2d 1305 (1981); *Rothman v. Rothman*, 65 N.J. 219, 320 A. 2d 496 (1974); *D'Agostino v. D'Agostino*, 463 A. 2d 200 (R.I. 1983); *LaRue v. LaRue*, 304 S.E. 2d 312 (W. Va. 1983); Sharp, *Equitable Distribution of Property In North Carolina: A Preliminary Analysis*, 61 N.C. L. Rev. 247 (1983).

[1] With this background information in mind, we now turn to the specific issues raised by this appeal. Our first task is to determine whether the trial court was correct in its view that the Equitable Distribution Act creates a presumption that an equal division of the marital property is equitable and therefore appropriate. N.C.G.S. 50-20(c) provides:

There shall be an equal division by using net value of marital property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property equitably. Factors the court shall consider under this subsection are as follows:

(1) The income, property, and liabilities of each party at the time the division of property is to become effective;

(2) Any obligation for support arising out of a prior marriage;

(3) The duration of the marriage and the age and physical and mental health of both parties;

(4) The need of a parent with custody of a child or children of the marriage to occupy or own the marital residence and to use or own its household effects;

(5) The expectation of nonvested pension or retirement rights, which is separate property;

(6) Any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property

by the party not having title, including joint efforts or expenditures and contributions and services, or lack thereof, as a spouse, parent, wage earner or homemaker;

(7) Any direct or indirect contribution made by one spouse to help educate or develop the career potential of the other spouse;

(8) Any direct contribution to an increase in value of separate property which occurs during the course of the marriage;

(9) The liquid or nonliquid character of all marital property;

(10) The difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest, intact and free from any claim or interference by the other party;

(11) The tax consequences to each party; and

(12) Any other factor the court finds to be just and proper.

The trial court in the present case indicated that "pursuant to G.S. 50-20, an equal division of the marital property of the parties is presumed appropriate." The statute in fact does more. It does not create a "presumption" in any of the senses that term has been used to express "the common idea of assuming or inferring the existence of one fact from another fact or combination of facts." 2 Brandis on North Carolina Evidence, § 215 (2d ed. 1982). Instead, the statute is a legislative enactment of public policy so strongly favoring the equal division of marital property that an equal division is made *mandatory* "unless the court determines that an equal division is not equitable." N.C.G.S. 50-20(c). The clear intent of the legislature was that a party desiring an unequal division of marital property bear the burden of producing evidence concerning one or more of the twelve factors in the statute and the burden of proving by a preponderance of the evidence that an equal division would not be equitable. Therefore, if no evidence is admitted tending to show that an equal division would be inequitable, the trial court *must* divide the marital property equally.

When evidence tending to show that an equal division of marital property would not be equitable is admitted, however, the trial court must exercise its discretion in assigning the weight each factor should receive in any given case. It must then make an equitable division of the marital property by balancing the evidence presented by the parties in light of the legislative policy which favors equal division.

In the present case evidence was admitted tending to show that an equal division would not be equitable. We turn then to consider the proper standard of review of equitable distribution awards in such cases. Historically our trial courts have been granted wide discretionary powers concerning domestic law cases. *See, e.g., Sayland v. Sayland,* 267 N.C. 378, 148 S.E. 2d 218 (1966) (permanent alimony); *Hall v. Hall,* 250 N.C. 275, 108 S.E. 2d 487 (1959) (alimony *pendente lite); Wright v. Wright,* 216 N.C. 693, 6 S.E. 2d 555 (1940) (alimony and child support); *In Re Custody of Pitts,* 2 N.C. App. 211, 162 S.E. 2d 524 (1968) (child custody). The legislature also clearly intended to vest trial courts with discretion in distributing marital property under N.C.G.S. 50-20, but guided always by the public policy expressed therein favoring an equal division. The legislative intent to vest our trial courts with such broad discretion is emphasized by the inclusion of the catch-all factor codified in N.C.G.S. 50-20(c)(12).

It is well established that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion. *See, e.g., Clark v. Clark,* 301 N.C. 123, 271 S.E. 2d 58 (1980); *Welch v. Kearns,* 261 N.C. 171, 134 S.E. 2d 155 (1964); *Lamm v. Lorbacher,* 235 N.C. 728, 71 S.E. 2d 49 (1952); *In Re LaFayette Bank & Trust Co. of Fayetteville,* 198 N.C. 783, 153 S.E. 452 (1930). A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason. *See Clark v. Clark,* 301 N.C. 123, 271 S.E. 2d 58 (1980). A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.

[2] Turning to the facts of this case, we are unable to say that the trial court abused its discretion in concluding that each party was entitled to an equal share of the marital property. The find-

ings of fact show that the trial court admitted and considered evidence relating to several of the twelve factors contained in N.C.G.S. 50-20(c). The defendant wife does not allege that the trial court failed to consider the evidence relevant to such factors. Instead she claims that in reaching a decision on the division of the marital property, the trial court failed to give proper weight to her nonfinancial contributions to the marriage and to the fact that her income significantly exceeded that of her husband from 1975 to 1978.

The trial court found as a fact that she had contributed nonfinancial services and wages to the marriage which exceeded in value the total fair market value of her interest in the jointly held property and her separately held property. The trial court, however, also found facts favorable to the plaintiff including that he was employed during the early part of the marriage, that his present salary was less than the defendant's, and that the defendant's vested pension rights exceeded his. The trial court perhaps could have weighed the evidence differently and awarded the defendant wife more than an equal share of the property. However, when coupled with the legislative policy favoring equal division, we cannot say that the evidence fails to show any rational basis for the distribution ordered by the court. Therefore, we detect no abuse of discretion.

In this case the trial court did not expressly state in its order that an equal division of the marital property would be equitable. The defendant argues that a specific determination to this effect was required. We disagree. The task of a trial court when faced with an action under N.C.G.S. 50-20 is to equitably distribute the marital property between the litigants. This is evident from the language and the title of the Act. Once the trial court orders a distribution, it has held *sub silentio* that such distribution is fair and equitable. A specific statement that the distribution ordered is equitable is not required.

As modified herein, the decision of the Court of Appeals affirming the order of the trial court is affirmed.

Modified and affirmed.

Justice VAUGHN took no part in the consideration or decision of this case.