McGEE, Chief Judge.
Respondent-Appellant Father ("Father") appeals from an adjudication and dispositional order, adjudicating his daughters N.N .N., C.N.N., A.N., and A.N. ("the Children") to be neglected juveniles, although he contends only that the trial court erred in ordering him to obtain a domestic violence assessment. We affirm.
I. Background
Father and Respondent-Mother ("Mother") married in 1996 and separated in 2013. Wake County Human Services ("WCHS") obtained nonsecure custody of the Children on 22 August 2014 and filed juvenile petitions ("the petitions") on 25 August 2014 alleging neglect and dependency. The petitions alleged WCHS became involved with the family due to the Children being "exposed to" domestic violence between Father and Mother. With regard to Father specifically, the petitions alleged Father had a "history of abuse and domestic violence against the [C]hildren and their mother." The petitions further recounted an incident where WCHS needed to cut short a Child and Family Team Decision Making meeting ("TDM") on 5 August 2014 because Father was "yelling and aggressive[.]" The petitions also alleged that Father was homeless and unable to care for the Children, that he had been "uncooperative" with WCHS, and that he would not reveal his physical address.
The trial court held a hearing on the petitions on 14 and 15 October 2014. It received testimony as to adjudication from Christi Stephenson ("Ms.Stephenson"), an in-home service worker for WCHS Child Protective Services ("CPS"), and from Father. In an order entered 26 November 2014 ("the order"), the trial court adjudicated the Children neglected, in that they "d [id] not receive proper care and supervision from their parents and live[d] in an environment injurious to their welfare." SeeN.C. Gen.Stat. § 7B-101 (2013). The order also continued the Children's placement in WCHS custody, awarded Father and Mother each one hour per week of supervised visitation, and ordered Father and Mother to comply with the conditions of their Out of Home Services Agreements with WCHS. The trial court also ordered Father to participate in a domestic violence assessment. Father appeals.
II. Factual Challenge
Father first challenges finding of fact 9 in the order: "In April 2014, [Mother] obtained a domestic violence protective order [ ('DVPO') ] against [Father]." He argues that this finding is not supported by "clear and convincing evidence[,]" as required by N.C. Gen.Stat. § 7B-805 (2013). We disagree.
"When an appellant asserts that an adjudication order of the trial court is unsupported by the evidence, this Court examines the evidence to determine whether there exists clear, cogent and convincing evidence to support the findings." In re McCabe,157 N.C.App. 673, 679, 580 S.E.2d 69, 73 (2003) (citations omitted). "It is not the role of this Court to weigh the evidence and substitute our own findings for those of the trial court." Jones v. Jefferson,91 N.C.App. 289, 297, 372 S.E.2d 80, 84 (1988). "If there is competent evidence, the findings of the trial court are binding on appeal." McCabe,157 N.C.App. at 679, 580 S.E.2d at 73 (citations omitted).
Ms. Stephenson testified at the hearing: "I know there was a [DVPO] filed and custody was given to [Mother]. I don't know the exact date." Ms. Stephenson subsequently clarified that "there was a DVPO filed in April [2014], [and WCHS] got the [CPS] report on April the 29th[,]" and that "[t]o the best of [her] knowledge the DVPO was dismissed" sometime later. Although Father now questions on appeal "how [Ms. Stephenson] gained her knowledge" of the DVPO, he does not contest whether a DVPO against him was actually filed. Moreover, Father did not raise any objection to Ms. Stephenson's testimony at the hearing, nor did he provide any evidence to support the contention that a DVPO was not filed. Father's argument is without merit.
III. Domestic Violence Assessment
Father next contends the trial court exceeded its dispositional authority under N.C. Gen.Stat. § 7B-904 (2013) by ordering him to obtain a domestic violence assessment and "follow through with [any] recommended services." He argues that the trial court made no express finding "that any domestic violence had occurred" or "that domestic violence was a fact that led to the [C]hildren's removal" or was "the basis of the neglect adjudication[s]." Absent an express finding that he committed an act of domestic violence, as defined by N.C. Gen.Stat. § 50B-1(a) (2013), Father contends, "the court could [not] properly order services to remediate that condition." We disagree.
N.C. Gen.Stat. § 7B-904(c) (2013) provides that after adjudicating a juvenile to be abused, neglected, or dependent,
the court may determine whether the best interests of the juvenile require that the parent ... undergo psychiatric, psychological, or other treatment or counseling directed toward remediating or remedying behaviors or conditionsthat led toor contributed tothe juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent.... If the court finds that the best interests of the juvenile require the parent ... [to] undergo treatment, it may order that individual to comply with a plan of treatment approved by the court[ .]
(emphasis added). This Court reviews orders under N.C.G.S. § 7B-904(c) for abuse of discretion. See In re A.S.,181 N.C.App. 706, 712, 640 S.E.2d 817, 821, aff'd per curiam,361 N.C. 686, 651 S.E.2d 883 (2007). "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." White v. White,312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).
Father relies primarily on two cases to support his contention that the trial court erred in ordering him to obtain a domestic violence assessment. In In re W.V.,204 N.C.App. 290, 297, 693 S.E.2d 383, 388-89 (2010), the trial court ordered respondent-father to obtain employment, but this Court vacated that part of the trial court's order because "[n]othing in the record suggest [ed] that respondent's employment situation, or lack thereof, led to or contributed to the juvenile's adjudication." Similarly, in In re H.H.,---N.C.App. ----, 767 S.E.2d 347, 352 (2014), the trial court ordered respondent-mother to maintain stable housing and employment. However, in spite of "copious evidence" that respondent-mother's housing and employment difficulties contributed to the juveniles' being adjudicated neglected and dependent and to their removal from respondent-mother's custody, this Court vacated that part of the trial court's order because "the petitions did not allege and the [trial] court did not find as fact that these [housing and employment difficulties] led to the juveniles' removal from [r]espondent-mother's custody or formed the basis for their adjudications." Id.at ----, 767 S.E.2d at 353.
The present case is distinguishable from both of Father's proffered cases. Unlike In re W.V.,the record here is replete with evidence that Father's behavior was abusive, out of control, and contributed to the Children being removed from, and not being returned to, Father's custody. WCHS submitted an Adjudication and Disposition Court Summary during the disposition phase of the hearing, without objection from Father, that affirmatively stated the Children witnessed "a domestic violence incident between the parents" and that the two youngest Children described Father as "mean and abusive." Ms. Stephenson likewise testified at the hearing that the Children reported "being emotionally abused" by Father while in his custody. Ms. Stephenson also testified about multiple instances where she observed Father screaming or becoming "so irate to the point where [she] thought [she] was going to have to call the police" and suggested that Father's behavior and uncooperativeness impeded WCHS's efforts to reunify the family.
Also, unlike In re H.H.,the petitions in the present case do allege that the Children witnessed domestic violence between their parents and that there was "a history of abuse and domestic violence [by Father] against the [C]hildren and their Mother." The petitions also alleged that Father exhibited "uncooperative" and "aggressive" behavior during WCHS's attempts to work with the Children's family. Furthermore, the trial court's order includes the following findings[1] that reflect a number of these allegations in the petitions:
9. In April 2014, [Mother] obtained a domestic violence protective order against [Father].
...
11. [WCHS] implemented in-home services ... to address concerns with homelessness/unstable housing, domestic violence, and the mental health needs of the [C]hildren and [Mother].
...
20. [Father] participated in the pre-petition TDM meeting by telephone. The call had to be terminated due to his screaming during the meeting.
...
22. The [C]hildren have expressed fear of their father.
...
31. WCHS has observed [Father's] behavior to be erratic, with quickly shifting moods and behavior.
32. The [C]hildren have very strong feelings against their father at this time.
In its order, the trial court made the following conclusions of law based upon the above findings of fact, which were uncontested:
2. The [C]hildren are neglected as defined by N.C.G.S. § 7B-101(15) in that the [C]hildren do not receive proper care and supervision from their parents and live in an environment injurious to their welfare.
...
4. It is in the best interests of the [C]hildren that this Court adopt as its Order the plan[s] proposed by [WCHS] and Guardian ad Litem [ ("the GAL") ] to achieve a safe, permanent home for the [C]hildren within a reasonable time.
(emphasis added). The plans proposed by WCHS and the GAL each recommended that Father undergo a domestic abuse or domestic violence assessment. Even if the trial court did not make an express finding that Father committed an act of domestic violence, as defined by N.C.G.S. § 50B-1(a), the petitions, evidence, and binding facts, stated above, all indicate that Father's behavior and history involving domestic violence at least "contributed" to the Children's neglect adjudications. Therefore, we cannot say the trial court acted arbitrarily or without reason by directing Father to undergo a domestic violence assessmentin order to begin "remedying" that behavior. N.C.G.S. § 7B-904(c).
AFFIRMED.
Judges CALABRIA and HUNTER, JR. concur.
Report per Rule 30(e).
Opinion
Wake County, Nos. 14 JA 234-37.
Appeal by Respondent-Father from order entered 26 November 2014 by Judge Monica M. Bousman in District Court, Wake County. Heard in the Court of Appeals 13 July 2015.

With the exception of finding 9, which we have already determined is binding on this Court, Father does not contest any of these findings and they are "presumed to be supported by competent evidence and are binding on appeal." Horton v. Redevelopment Commission, 262 N.C. 306, 313, 137 S.E.2d 115, 120 (1964) (citation omitted).