IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-518

No. COA 21-436

Filed 2 August 2022

Mecklenburg County, No. 13-CVD-11484

MICHAEL M. BERENS, Plaintiff

v.

MELISSA C. BERENS, Defendant.

Appeal by Plaintiff from order entered 5 January 2021 by Judge Sean P. Smith in Mecklenburg County District Court. Heard in the Court of Appeals 27 April 2022.

*James, McElroy & Diehl, P.A., by Gena Graham Morris and Preston O. Odom, III, for Plaintiff-Appellee.*

*Fox Rothschild LLP, by Troy D. Shelton and Connell and Gelb PLLC by Michelle D. Connell for Defendant-Appellant.*

DILLON, Judge.

¶ 1     This appeal is the fifth to our Court in this nine-year old action between these parties concerning the dissolution of their marriage.

¶ 2     This appeal was taken by Defendant Melissa C. Berens ("Mother") from an order (the "2021 Modification Order") entered on 5 January 2021 modifying the obligation of Plaintiff Michael Berens ("Father") to pay child support for the minor children born to the marriage.

I. Background

¶ 3        Father and Mother married in 1989, had six children during the marriage, separated in July 2012, and divorced in December 2014.

¶ 4        In 2013, Father commenced this action, including a claim for child support.

¶ 5        In 2015, the trial court entered a *temporary* child support order, directing Father to pay monthly child support at a certain level.

¶ 6        In May 2017, a trial was held to establish *permanent* child support obligations. At the time of trial, three of the children were still minors. The trial court took the matter under advisement for 14 months, finally entering its permanent child support order in July 2018.

¶ 7        During these 14 months, one of the three minor children turned 18. Accordingly, in May 2018 – two months before the trial court entered its permanent order – Father moved to modify the 2015 temporary order (the order that was still in place), based on the change of circumstance that a child had reached adulthood.

¶ 8        In July 2018, while Father's motion was pending, the trial court entered its permanent order, based on the evidence presented 14 months prior, without taking into account that one of the children had turned 18 years old in the interim. In its 2018 permanent order, the trial court retroactively increased Father's child support obligation from 2013, which required Father to make a lump sum payment to account for the retroactive increase over the previous five years. Both parties appealed the 2018 permanent order, which was the fourth appeal to our Court in this matter.

¶ 9        In January 2020, we issued our opinion in that fourth appeal, affirming the 2018 permanent order. *Berens v. Berens*, 269 N.C. App. 474, 837 S.E.2d 215 (2020) (unpublished) (*"Berens IV"*). On the child support issue, we held, in part, that the trial court did not err by not taking into account that a child had turned 18 while the matter was under advisement, recognizing that "[Father] may now file a motion to modify support in light of another child reaching the age of majority." *Berens IV*, *10.

¶ 10        Eight months later in September 2020, the trial took up Father's May 2018 motion to modify the 2015 *temporary* child support order. On the day of trial, Father filed a supplement to his May 2018 motion to clarify that the order from which he was seeking modification was now the 2018 permanent order.

¶ 11        All the while, Father made the retroactive lump sum payment and continued paying his obligations as directed by the trial court in its July 2018 permanent order.

¶ 12        In January 2021, the trial court entered its 2021 Modification Order, determining that a change of circumstance had indeed occurred in May 2018 when one of the children turned 18 and graduated from high school. Based on this determination, the trial court retroactively reduced Father's child support obligation from June 2018. Thus, the trial court directed Mother to pay back $40,859.28 received from Father since June 2018. Mother timely appealed.

## II. Analysis

¶ 13        Mother argues that the trial court erred in two ways, which we address in turn.

## A. Modification Order

¶ 14        Mother first argues that the trial court had no authority to change the child support payments *retroactively* from June 2018, based on N.C. Gen. Stat. § 50-13.10(a) (2021). She reasons that this statute does not allow a trial court to modify *any* child support obligation which accrued *before* Father filed his modification motion; that Father's motion to modify filed in May 2018 does not qualify as a motion which could trigger the trial court's authority since the motion was to modify the 2015 temporary order which had since been mooted by the 2018 permanent order; and that, therefore, the trial court's authority to modify could not extend to Father's monthly obligation which accrued prior to September 2020, when Father filed his supplemental motion. She concludes that, therefore, we should strike the portion of the 2021 Modification Order which directs her to repay Father $40,859.28 for the "overpayments" he made back to his May 2018 child support payment.

¶ 15        Father essentially argues that his motion to modify filed in May 2018 should be sufficient to trigger Section 50-13.10(a), notwithstanding that the motion was filed before the 2018 permanent order was entered.

¶ 16        We disagree with Mother for two reasons, addressed below.

        1. The plain language of Section 50-13.10(a).

¶ 17        First, we so conclude based on a reason not argued by Father: The portion of Section 50-13.10(a) – which prohibits a trial court from retroactively modifying any

child support obligation that arose prior to the filing of a motion to modify – does not apply. This statute only applies to "past due" obligations, and Father was not "past due" on any child support obligation.

¶ 18       Prior to the enactment of Section 50-13.10 in 1987, under our common law a trial court had the discretion to "retroactively modify child support arrearages when equitable considerations exist which would create an injustice if modification is not allowed." *Craig v. Craig*, 103 N.C. App. 615, 619, 406 S.E.2d 656, 658 (1991) (citations omitted). In its discretion, a trial court could modify child support obligations accruing before the filing of any motion. Our Supreme Court has essentially recognized this common law authority. Specifically, a case cited in *Craig* for this proposition was affirmed by our Supreme Court; namely, *Gates v. Gates*, 69 N.C. App. 421, 317 S.E.2d 402 (1984), *aff'd per curiam*, 312 N.C. 620, 323 S.E.2d 920 (1985). In *Gates*, we held that a trial court could *retroactively* reduce a parent's child support obligation from the time his minor child turned 18, where no motion had previously been filed, where "it would work an injustice to require [the supporting parent] to pay according to the letter of the [prior] Order[.]" *Id.* at 430, 317 S.E.2d at 408.

¶ 19       In 1987, our General Assembly enacted Section 50-13.10(a), which stripped a trial court of *some* discretion recognized under common law to modify child support obligations accruing prior to the filing of a motion:

> Each past due child support payment is vested when it accrues and may not thereafter be vacated, reduced, or otherwise modified in any way for any reason, in this State or any other state, except that <u>a child support obligation may be modified as otherwise provided by law</u>, and *a vested past due payment is to that extent subject to divestment, if, but only if, a written motion is filed, and due notice is given to all parties*:
>
> (1) Before the payment is due or
>
> (2) If the moving party is precluded by . . . other compelling reason from filing a motion before the payment is due, then promptly after the moving party is no longer so precluded.

*Id.* (underline and italics added). The plain language of this statute provides that only "past due" obligations which accrued after the date that the parent seeking modification files and gives notice of his motion may be modified (italicized portion). The statute, though, further provides that a "child support obligation" (without any reference to "past due" obligations) may, otherwise, be modified as "provided by law" (underlined portion), which includes our common law recognized in the precedent from our Court and our Supreme Court cited above.

¶ 20 There is nothing in the record before us which suggests that, at the time the 2021 Modification Order was entered, Father was "past due" in any payment he was required to make under prior orders. Accordingly, even if Father's May 2018 motion was mooted by our affirmance of the 2018 permanent order, the trial court was not prohibited under Section 50-13.10(a) from modifying Father's child support obligation

accruing from the time that one of the children was emancipated. And the 2021 Modification Order otherwise supports the retroactive change under our case law: Mother was aware that her child had turned 18 and had graduated high school; Mother was aware in May 2018 that Father was seeking a reduction in his child support obligation based on this change of circumstance; and Mother would not be prejudiced by the retroactive change.

¶ 21     It could be argued that, notwithstanding the plain language of Section 50-13.10, we should consider the stated *purpose* of Section 50-13.10 to strip a trial court's common law authority to modify *any* child support obligation accruing prior to the filing and notice of a motion to modify, whether past due or not. Indeed, our Supreme Court has instructed that "[t]he primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute." *State v. Hooper*, 358 N.C. 122, 125, 591 S.E.2d 514, 516 (2004). But that Court further instructs that "[t]he first step in determining a statute's purpose is to examine the statute's plain language" and that "[w]here the language of the statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *Id.* Here, the plain language of the statute only abrogates a trial court's authority with respect to obligations that vested but which have not yet been paid.

¶ 22     It could be argued that our interpretation runs counter to our General Assembly's purpose in enacting Section 50-13.10 in 1987. Specifically, the title of the

Act which codified Section 50-13.10 suggests that the Act's purpose was to bring our State into compliance with a federal requirement, enacted by Congress the prior year, in 1986, so that our State would be eligible to receive federal dollars to aid our State's efforts in protecting each child's right to receive support from his/her parents. *See* 42 U.S.C. §§ 651. The 1987 session law enacting Section 50-13.10 is entitled "An Act to Prohibit Retroactive Modification of Past Due Child Support Payments and to Give Vested Past Due Child Support the Judgment Effect *Required by Federal Law*." 1987 N.C. Sess. Laws Ch. 739 (emphasis added).

It is not clear, however, that the plain language of our statute would run afoul of the federal law for which it was adopted. The federal law at issue is known as Bradley Amendment, codified in 42 U.S.C. § 666(a)(9) (1986). This Amendment provides that for a state to receive the federal dollars, it must implement

> (9) Procedures which require that any payment or installment of support under **any child support order** …
>
> (C) not [be] subject to retroactive modification by such State or by any other State;
>
> except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, **but only from the date that notice of such petition has been given**, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor.

*Id.* (emphasis added). It could be argued that the plain language of the Bradley Amendment requires a State desiring federal dollars to prohibit "any" child support obligation accruing prior to the filing of a petition from being modified, whether or not that "payment or installment" has already been paid. Under this interpretation, one might argue that we should then construe Section 50-13.10(a) contrary to its plain language by prohibiting a judge from modifying "any" payment (rather than just "past due" payments) accruing before the filing of the motion.

But there is strong evidence that Congress' *purpose* in enacting the Bradley Amendment was to prevent a participating State from modifying arrearages.[1]

In sum, to construe Section 50-13.10 as preventing trial courts from retroactively modifying even non-past due payments accruing before the filing of a motion, we would have to ignore the plain language of our statute and the purpose of the Bradley Amendment.

---

[1] For additional context, the U.S. Senate Report explains "[w]hat the Committee is seeking to prevent is the purposeful noncompliance by the noncustodial parent, because of his hope that his child support obligation will be retroactively forgiven" S. Rep. No. 348, p. 155 (1986). Further, the Congressional Research Service summarizes the Bradley Amendment's purpose as preventing "the retroactive State modification of child support **arrearages**… a state cannot modify **delinquent** child support obligations." Cong. Rsch. Serv., RS20642, The Bradley Amendment: Prohibition Against Retroactive Modification of Child Support Arrearages 1 (2000) (emphasis added). This purpose is appropriately reflected in legislation enacted in other States, which supplement "arrearage" and "due and unpaid" in place of "past due." See Alaska R. Civ. Proc. 90.3 ("Child support arrearage may not be modified retroactively"); and N.D. Cent. Code, 14-08.1-05 ("Any order directing payment or installment of money for the support of a child is, on and after the date it is due and unpaid [and] not subject to retroactive modification").

2. Mandate Rule

¶ 26    Mother argues that the trial court erred by issuing the Modification Order contrary to certain language in *Berens IV*, which she asserts amounts to a mandate.

¶ 27    Our Court reviews issues regarding the interpretation of its own mandate *de novo*. *State v. Watkins*, 246 N.C. App. 725, 730, 783 S.E.2d 279, 282 (2016).

¶ 28    The mandate rule instructs that "on remand of a case after appeal, the mandate of the reviewing court is binding on the lower court, and must be strictly followed, without variation and departure from the mandate of the appellate court." *Collins v. Simms*, 257 N.C. 1, 11, 125 S.E.2d 298, 306 (1962) (Parker, J., concurring). The mandate itself is limited to holdings made by this Court in response to issues presented on appeal; any other discussions made within the opinion is *obiter dicta*. *Id.* at 11, 125 S.E.2d at 306.

¶ 29    Mother's argument is mooted by our conclusion that Section 50-13.10's abrogation of a trial court's common law authority only applies to past due obligations. But even if Section 50-13.10 were applicable, the mandate rule did not bar the trial court's consideration of Father's 2018 motion, as that motion was not before our Court in *Berens IV*.

¶ 30    The language Mother cites in our *Berens IV* opinion states, "[Father] *may now file* a motion to modify support in light of another child reaching the age of majority." This sentence is not a mandate, but rather it is *dicta*.

¶ 31        There was no mandate in *Berens IV* which *required* Father to file a new motion. Accordingly, the trial court did not violate the mandate rule.

## B. Sufficiency of the Evidence

¶ 32        Mother makes several arguments concerning the trial court's calculation of Father's modified child support obligation.

¶ 33        Child support orders entered by a trial court are accorded substantial deference by appellate courts, and our review is limited to a determination of whether there was a clear abuse of discretion. *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Under this standard of review, the trial court's ruling "will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 777, 324 S.E.2d at 833.

¶ 34        Also, we note when a trial court is faced with a child support case falling outside the North Carolina Child Support Guidelines,[2] there is not one formula a court must follow to determine the reasonable needs of a child. *Bishop v. Bishop*, 275 N.C. App. 457, 463, 853 S.E.2d 815, 820 (2020). Instead, the judge has the

---

[2] Child support cases are outside the North Carolina Child Support Guidelines when the parties' incomes are above the income range addressed by the Guidelines or "when the trial court determines deviation from the Guidelines is necessary because 'after considering the evidence, the Court finds by the greater weight of the evidence that the application of the Guidelines would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support or would be otherwise unjust or inappropriate.'" *Kincheloe v. Kincheloe*, 278 N.C. App. 62, 68-69, 862 S.E.2d 28, 34 (2021) (quoting N.C. Gen. Stat. § 50-13.4(c)).

opportunity to consider the interplay of factors of a particular case. *Plott v. Plott*, 313 N.C. 63, 69, 326 S.E.2d 863, 867 (1985). "Computing the amount of child support is normally an exercise of sound judicial discretion, requiring the judge to review all of the evidence before him. Absent a clear abuse of discretion, a judge's determination of what is a proper amount of support will not be disturbed on appeal." *Id.* at 69, 326 S.E.2d at 868.

¶ 35         In a case for child support, the trial court must make specific findings and conclusions. *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 708, 188-89 (1980). The purpose of this requirement is to allow a reviewing court to determine from the record whether a judgment and the legal conclusions which underlie it represent a correct application of the law. *Id.*

### 1. Mother's Reasonable Monthly Needs

¶ 36         Mother argues the trial court erred by not increasing the amount of her reasonable monthly expenses based on evidence that the monthly debt service on her home had greatly increased after she refinanced the mortgage sometime after the 2017 hearing on permanent child support. The trial court, though, found that Mother's decision to refinance was discretionary and unnecessary. As the factfinder, the trial court is the sole judge on credibility. Accordingly, we affirm the trial court's findings and conclusions in this regard.

### 2. UTMA Accounts

¶ 37    Mother contends the trial court erred by considering the availability of the children's money contained in their UTMA (Uniform Transfers to Minors Act) accounts to pay for the children's private school tuition and car insurance. The trial court provided that "the UTMA account balance in excess of $234,000.00 was considered in removing the claimed monthly expense for the children's Charlotte Latin School tuition and car insurance expenses."

¶ 38    Our General Assembly directs that the trial court calculating child support shall give "due regard to the estates, earnings, conditions, accustomed standard of living *of the child* and the parties" when making its calculations. N.C. Gen. Stat. § 50-13.4(c) (emphasis added).

¶ 39    Here, the children's UTMA accounts were funded largely by Father. The trial court already determined in its 2018 permanent child support order that the children's private school tuition was not to be included within the children's reasonable expenses, as it could be paid from the children's UTMA accounts. And this order was affirmed by our Court in *Berens IV*. We, therefore, conclude that the trial court did not abuse its discretion in its 2021 Modification Order in this regard.

### 3.  529 Plan Accounts

¶ 40    Mother argues that the trial court erred in making certain findings regarding the 529 Plans *owned by Mother*. Indeed, it is Mother who was awarded the funds in the 529 Plans as part of the equitable distribution of marital assets. She is free to do

with the funds in those Plans as she sees fit. Of course, if she chooses to use the funds for something other than the educational expenses of her children, she may owe a tax penalty.

¶ 41          In any event, the trial court did not order Mother to use her funds currently in the 529 Plans to pay for the children's education. And it was otherwise appropriate for the trial court to give due regard to Mother's estate in setting the child support obligations of the parties.

### 4.  Mother's Income

¶ 42          Mother's final contention is that the trial court erred by relying on Father's testimony regarding employment and investment income.

¶ 43          In a child support case falling outside the Guidelines, the trial court must determine the relative ability of the parties to provide for the children. *Smith*, 247 N.C. App. at 145-46, 786 S.E.2d at 21. Any order modifying child support should include specific findings to address each parent's financial position. *Crews v. Paysour*, 261 N.C. App. 557, 564, 821 S.E.2d 469, 474 (2018).

¶ 44          Child support obligations are determined by a party's actual income at the time the order is modified. *Ellis v. Ellis*, 126 N.C. App. 362, 364, 485 S.E.2d 82, 83 (1997). "In orders of child support, the court should make findings of specific facts (e.g., incomes, estates) to support a conclusion as to the relative abilities of the parties to

provide support." *Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468-469, 1978) (quoting N.C. Gen. Stat. 50-13.4).

¶ 45        The trial court found that the reasonable monthly needs of the minor children to be $4,765.98 and that Father should pay child support of $2,836.64 monthly, or about 60% of these expenses. This makes Mother responsible for $1,929.64 monthly (or about 40%) of these expenses. The trial court found that Mother's monthly income "beginning October 1, 2020 is $17,992.15."

¶ 46        The trial court found that this number included $4,195 in monthly alimony paid to her by Father and $1,570 monthly income based on the trial court's finding that Mother earns 3% interest off her liquid assets. It is unclear from the Modification Order or from the evidence how the trial court arrived at the other $12,237 of monthly income. There was certainly evidence regarding the gross commissions earned by Mother as a real estate broker. However, there was evidence that some of these gross commissions were shared with other brokers and/or the brokerage company Mother worked under. Also, the amount of legitimate business expenses Mother incurred to earn those commissions is unclear. Father argues that his estimate of Mother's gross income was close to that offered in Mother's evidence. But it is clear that Father's estimate failed to take into account the reality that brokers split the brokerage fee earned on the sale of a home with the brokerage firm they work for and with other brokers. We, therefore, vacate and remand this portion

of the trial order establishing the child support obligations from 1 October 2020 going forward. On remand, the trial court is to make findings regarding Mother's other income and, based on those findings, determine the portion of the minor children's reasonable needs she should be responsible for.

### III. Conclusion

We vacate the portions of the Modification Order determining Mother's monthly income as of 1 October 2020 and establishing Father's child support obligations from that date going forward. We remand for further findings and conclusions on those issues. On remand, the trial court may, in its discretion, hear additional evidence.

We, otherwise, affirm the remainder of the trial court's Modification Order.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

Judges ZACHARY and MURPHY concur.