An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-832

Filed 15 April 2026

North Carolina State Bar Disciplinary Hearing Commission No. 24DHC1

THE NORTH CAROLINA STATE BAR, Plaintiff,

> v.

RICHARD E. BATTS, Attorney, Defendant.

Appeal by defendant from order entered 26 August 2024 by the North Carolina State Bar Disciplinary Hearing Commission. Heard in the Court of Appeals 26 March 2026.

> *The North Carolina State Bar, by Deputy Counsel Danielle Marquis Elder, for plaintiff-appellee.*

> *Richard E. Batts, pro se, for defendant-appellant.*

ARROWOOD, Judge.

Richard E. Batts ("defendant") appeals from an Order of Discipline from the Disciplinary Hearing Commission ("DHC") of the North Carolina State Bar ("State Bar"). In its Order filed 26 August 2024, the DHC found defendant violated numerous provisions of the North Carolina Rules of Professional Conduct and suspended him from the practice of law for one year, staying the suspension upon

specified conditions.

## I.    Background

Defendant has been an attorney and member of the State Bar since 1981 with a law office in Rocky Mount. He maintained an attorney trust account with Wells Fargo for depositing his clients' entrusted funds.

On 3 November 2022, pursuant to an open grievance file, the State Bar wrote to defendant following his response to a letter of notice. Defendant was advised that he was not in compliance with Rules of Professional Conduct related to maintenance of client ledgers and regular reconciliations and reviews. He was advised, "[T]here is no provision in the Rules for you to substitute alternate processes for the specific reconciliations and reviews required by the Rules."

During the adjudicatory stage of this case, the DHC entered a consent order containing findings of fact and conclusions of law, which the parties stipulated to and agreed upon. Therefore, the following stipulated facts are not in dispute.

Defendant admits to the following: Since at least June 2021, defendant (1) failed to review and reconcile his trust account; (2) failed to maintain accurate client ledgers for all receipts and disbursements; (3) deposited settlement funds received for clients into a separate operating account; (4) received entrusted funds into a personal PayPal account but failed to promptly transfer them to his trust account; (5) transferred multiple clients' entrusted funds simultaneously without identifying either the clients or the entrusted amounts; and (6) issued a trust account check

against insufficient funds due to an accumulated balance in his personal PayPal account.

The State Bar initiated this disciplinary action on 2 January 2024 by filing a complaint in the DHC. Defendant initially filed an Answer and Counterclaim. However, he later filed a Motion for Judgment on the Pleadings, withdrew his previous denials, dismissed his counterclaims without prejudice, and admitted to the above course of conduct in an attached affidavit. After consideration by a Hearing Panel, the DHC entered an order finding "by clear, cogent, and convincing evidence" its findings of facts and conclusions of law, "[b]ased upon the pleadings, the stipulated facts, and upon the consent of the parties." The DHC then granted, as a motion for partial summary judgment, defendant's Motion for Judgment on the Pleadings and ordered a dispositional hearing to address the issue of discipline.

Defendant filed a Motion for No. 84-28(c) Action requesting a finding of minor violations offset by mitigation and asking that no disciplinary action be taken, and he included several attachments and an affidavit. The State Bar opposed this motion. The State Bar also moved to compel discovery responses from defendant. The DHC granted this motion to compel against defendant's opposition. After a full evidentiary hearing on 15 August 2024, the DHC entered its Order of Discipline, staying defendant's one-year suspension as long as he complied with conditions "designed to achieve and maintain full compliance with the trust account record-keeping, review, and reconciliation requirements of the Rules of Professional Conduct[.]"

Defendant moved for a stay of this Order pending review and post-trial relief pursuant to North Carolina Rules of Civil Procedure 59 and 60. The DHC denied these motions. Defendant then appealed the Order.

## II.     Discussion

Defendant contends that the Order's factual findings failed to consider the whole record, that the DHC abused its discretion in suspending defendant, and that the DHC erred in denying his Motion for No. 84-28(c) Action and Motions for Modification and Relief from Judgment. We address each argument in turn.

### A.     Standard of Review

This appeal concerns only the dispositional phase of the instant case. We review the DHC's imposition of sanctions for abuse of discretion. *N.C. State Bar v. Merritt*, 285 N.C. App. 534, 554 (2022). Accordingly, we ask whether the imposition of sanctions is "manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *N.C. State Bar v. Ethridge*, 188 N.C. App. 653, 667 (2008) (quotation and citation omitted).

In reviewing attorney discipline cases, this Court applies the "whole record" test to determine whether the DHC's Order has a "rational basis in the evidence." *N.C. State Bar v. Talford*, 356 N.C. 626, 634 (2003). N.C.G.S. § 84-28(c) provides the appropriate sanctions the DHC may impose after the adjudicatory phase results in the conclusion that an attorney committed misconduct. N.C.G.S. § 84-28(c). An order imposing suspension must contain "adequate and specific findings" addressing the

following "two key statutory considerations":

> [T]here must be a clear showing of how the attorney's actions resulted in significant harm or potential significant harm to the entities listed in the statute, *and* there must be a clear showing of why "suspension" . . . [is] the only sanction option[ ] that can adequately serve to protect the public from future transgressions by the attorney in question.

*Talford*, 356 N.C. at 638–39 (emphasis in original).

Thus, under the whole record test, we ask whether the DHC's ultimate decision had a "rational basis in the evidence" because, first, the factual findings that defendant's misconduct "resulted in significant harm or potential significant harm" were supported by substantial evidence meeting the "clear, cogent, and convincing" standard. *Id*. at 638. Then, we ask whether the particular factual circumstances adequately supported the DHC's choice of punishment as the only adequate option. *Id*. at 639. Then we ask whether these findings and legal conclusions adequately support the DHC's decision to ultimately impose the punishment. *Id*. at 639. We have no authority to modify or change the discipline imposed by the DHC so long as it is within statutory limits. *Ethridge*, 188 N.C. App. at 667.

### B.    Substantial Evidence Supported the Order's Findings of Fact

Defendant first argues that the findings of fact resulting in the DHC's decision to sanction him failed to consider the whole record by not considering the explanations and defenses he provided in his initial pleadings.

Here, the adjudicatory phase ended following the Hearing Panel's Consent

Order, which was based upon defendant's stipulated findings of fact and conclusions of law, including his admission to violations of the Rules of Professional Conduct and stipulation to the legal conclusion that the violations constituted "grounds for discipline pursuant to N.C. Gen. Stat. § 84-28(b)(2)." Further, in his Motion for Judgment on the Pleadings, defendant "withdr[ew] and disavowed" his previous denials and agreed "that there are no issues of material fact." Accordingly, the DHC issued its Order granting partial summary judgment as to the adjudicatory phase, from which defendant never appealed.

An Order of Discipline must include "the undisputed material facts and conclusions of law established by virtue of summary judgment[.]" 27 N.C. Admin. Code. 1B.0116(d). Accordingly, the present Order's Findings of Fact Regarding Discipline incorporate in full and verbatim the factual findings and conclusions of law stipulated to by defendant.

Having expressly disavowed his earlier denials and explanations, defendant ensures that we can find them neither clear, cogent, nor convincing. Moreover, his stipulations and inconsistent trust account reconciliations constitute clear, cogent, and convincing evidence sufficient to support the DHC's findings that the admitted misconduct caused significant harm or potential significant harm.

"Every lawyer is responsible for observance of the Rules of Professional Conduct. . . . Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves." N.C. R. Prof. Conduct 0.1[16]; *see*

*also* N.C.G.S. § 84-23. The legal profession is largely self-governing, and to preserve its integrity, the State Bars must enforce their Rules of Professional Conduct to deter attorney irresponsibility and dereliction of duty. Enforcement is especially crucial where clients' money is temporarily entrusted to the attorney and the attorney ignores the Rules intended to ensure the funds' safekeeping.

The DHC began its Findings of Fact Regarding Discipline with the principle that an attorney's proper handling of entrusted funds is a "cornerstone of client trust," and "failure to do so erodes the confidence clients place in attorneys who handle their affairs and harms the profession." We certainly agree. In all fields, isolated errors, oversights, or sloppiness in basic administration and bookkeeping can have unintended effects upon the pocketbooks and balance sheets of others. Because clients place profound trust in the attorneys handling their important concerns, lawyers must be diligent in all matters to ensure this trust is not misplaced. When an attorney errs in the routine administration of clients' entrusted funds, this not only undermines clients' trust in attorneys' ability to handle their affairs, but directly and foreseeably impacts clients' bottom lines.

This is why clients have the right to know the exact location and amount of any entrusted funds at all times. Comment 22 to Rule 1.15 explains that the "lawyer is responsible for keeping a client, or any other person to whom the lawyer is accountable, advised of the status of entrusted property held by the lawyer. In addition, the lawyer must take steps to discover any unauthorized transactions

involving trust funds as soon as possible." Attorney integrity in this domain is so important that any lawyer who realizes that "entrusted property has been misappropriated or misapplied" has an affirmative duty to notify the State Bar, even if this was the unintentional or inadvertent result of an accounting or bank error. N.C. R. Prof. Conduct 1.15-2.

Defendant stipulated to violations of the following subsections of Rule of Professional Conduct 1.15 governing the safekeeping of client property: (1) Rule 1.15-3(d), by failing to either conduct the required monthly and quarterly reconciliations of his attorney trust account or maintain required reports and reviews; (2) Rule 1.15-3(b)(5), by failing to maintain accurate client ledgers recording all receipts and disbursements and the account's running balance; (3) Rules 1.15-2(b) and (h), by depositing entrusted funds into his operating account; (4) Rules 1.15-2(a)-(b), by failing to promptly transfer entrusted funds from a personal account; (5) Rule 1.15-3(b)(1), by transferring funds without identifying either the related clients or specifying the associated amounts; and (6) Rule 1.15-2(a) and (n), by disbursing amounts in excess of his trust account's balance.

Because the "record-keeping, review, and reconciliation" Rules are intended to "assist with the proper protection, maintenance, and disbursement of entrusted funds, and to facilitate prompt detection and correction of errors," it was rational to conclude that failure to comply had caused significant harm to defendant's clients. It was likewise rational to conclude that defendant's deposit of entrusted funds into his

operating account, failure to maintain complete client ledgers with dates and amounts of individual deposits and disbursements, and failure to immediately transfer received entrusted funds to his trust account "caused significant harm and potential significant harm."

The DHC listed examples of misappropriations and misapplications of client funds supported by defendant's stipulations and inconsistent account reconciliations. All its examples supported the findings that defendant either risked or caused significant harm through erratic administration of his trust account, in clear violation of Rule 1-15. For example, defendant listed a negative balance for a client in June 2023, indicating that he "disbursed more funds from the trust account than he had in the trust account for the client, thereby misusing other client funds." Defendant also issued a check from his trust account on 3 November 2022 for which there were insufficient funds, resulting in an overdraft fee. Most problematically, the June 2024 reconciliation showed he should have had over $18,000.00 in his trust account as of 30 September 2022, but on this date its balance was only $5,607.78, indicating a difference of $12,556.14.

Further clear, cogent, and convincing evidence supported the DHC's other findings. A prior Consent Order of Discipline supported the finding that the DHC reprimanded defendant in 2019. The record supports the findings that he failed to comply with discovery or respond to interrogatories until the DHC ordered him to do so, and that he answered State Bar's interrogatories by summarily directing them to

previous filings. In the 15 August 2024 hearing, he maintained that his "system is sufficiently comprehensive to protect the interests of the clients, of the public[,]" claimed "I haven't misappropriated any money," and said "I've been trying to come into compliance for the last several years. I just haven't been successful[.]" This supports the findings that he continued to "refuse[ ] to acknowledge the inadequacy of his trust accounting practices or the harm and potential harm[.]"

In sum, this Order contains no Finding of Fact Regarding Discipline which was not supported by clear, cogent, and convincing evidence. The DHC's findings were specific and adequate as to the statutorily required findings of significant harm and potential significant harm. Therefore, there was no abuse of discretion.

C.    The Factual Findings Adequately Support the DHC's Conclusions

Based on these factual findings, the Hearing Panel identified three of the statutory factors it must consider in all disciplinary cases: Factor (A), Prior disciplinary offenses; Factor (B), Remoteness of prior offenses; and Factor (F), A pattern of misconduct. The DHC was required to consider defendant's prior disciplinary offense, which was indeed remote in time. *See* 27 N.C. Admin Code 1B.0116(f)(3)(A). The evidence also rationally supported the finding of a pattern. Defendant was aware as early as 3 November 2022 that his accounting practices were substandard and in violation of the relevant Rules, and he admitted that he was still not in compliance at the time of his hearing in August 2024.

The Hearing Panel found no factors warranting consideration of complete

disbarment. However, in considering the compulsory statutory factors to impose suspension, the Panel identified four: Factor (D), Elevation of Defendant's own interest above that of the client; Factor (E), Negative impact of Defendant's actions on client's or public's perception of the profession; Factor (H), Effect of Defendant's conduct on third parties; and Factor (J), Multiple instances of failure to participate in the legal profession's self-regulation process.

The conclusion that defendant elevated his own interest above clients' is amply supported, because he knew his proprietorship of client funds was neither in compliance with the Rules nor accomplishing their purposes, and he remained dilatory in coming into compliance throughout the adjudicatory and dispositional phases of his case despite having the time and opportunity to do so. Defendant also admits to the misuse and comingling of clients' entrusted funds. The DHC rationally concluded that this was not the conduct of an attorney properly serving his clients' interests. It was also plainly rational to conclude that defendant's participation in the profession's self-regulation fell short based on his hollow responses to the State Bar's interrogatories and his admission at his hearing that he was presenting materials previously undisclosed to opposing counsel.

Lastly, defendant's stipulation to his pattern of misconduct in public filings through the DHC is sufficient to support the conclusion that his actions negatively impacted third parties and public perception of the legal profession. "[L]egal institutions in a constitutional democracy depend on popular participation and

support to maintain their authority." N.C. R Prof. Conduct 0.1. Every instance of neglect of the Rules "compromises the independence of the profession and the public interest which it serves." *Id.* It follows that, by undermining the profession's authority, defendant negatively impacted other members of the State Bar and third parties who must rely upon those attorneys.

The Panel ultimately concluded that a conditionally stayed suspension with provisions "designed to achieve and maintain full compliance" was necessary and that all lesser sanctions would fail to adequately protect the public. Because he was still non-compliant, it was rational to conclude that, to protect defendant's present and future clients, it was necessary to require compliance prior to defendant's continued practice as well as supervision of his trust account administration.

The only mechanisms the DHC has to impose such conditions is through a stayed suspension or continuing legal education. *See* N.C.G.S. § 84-28(c) and 27 N.C. Admin. Code 1B.0116. Had the DHC determined any lesser punishment was appropriate, it would have been unable to ensure the safe stewardship of his clients' entrusted funds, and it would have undermined public trust in the State Bar's high ethical standards for its membership. Moreover, defendant needed no additional education on the Rules, because compliance with the Rules is the floor, representing the minimum requirements for attorney competence, not a ceiling our best attorneys should aspire towards.

Accordingly, the Order's legal conclusion that its punishment was appropriate

was rational and supported by the factual circumstances. The selection of this punishment was therefore not an abuse of the DHC's discretion in this case.

D.    The Order's Factual Findings and Legal Conclusions Adequately Supported the DHC's Imposition of Discipline

Because the DHC made the legal conclusion that its punishment was necessary to protect defendant's clients and the public, its imposition of this discipline was rational and adequately supported. It was fully appropriate under the relevant disciplinary statutes. *See* 27 N.C. Admin Code 1B.0116. All conditions therein were carefully designed to correct defendant's admitted misconduct and ensure that he would meet the minimum requirements of the Rules and thereby quickly continue his legal practice. Therefore, we find no abuse of discretion here, and the Order of Discipline passes the whole record test.

E.    The DHC Did Not Abuse its Discretion in Denying Defendant's Subsequent Motions

We review discretionary rulings on motions for relief under Rules 59 and 60 for abuse of discretion. *Davis v. Davis*, 360 N.C. 518, 523 (2006). Such rulings "will only be upset upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id*. (quoting *White v. White*, 312 N.C. 770, 777 (1985)).

As to defendant's Motion for 84-28(c) Action and Rule 59 request, defendant submits that his post-trial Motions are "incorporated by reference hereto as if included in the full text." But an appellant's argument must "contain the contentions of the appellant with respect to each issue presented" and "[i]ssues not presented in

a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C. R. App. P. 28. Accordingly, we cannot reach the merits of either argument.

As to his Rule 60 request, defendant contends that extraordinary circumstances exist, and that justice demands modification of the Order of Judgment. He argues that the DHC should have dismissed the State Bar's case for "lack of expert or professional accountant's testimony regarding any defects" in his practices. We disagree. No expert was required at the dispositional phase to confirm facts defendant admitted in the adjudicatory phase.

Defendant prays for "an admonition, at worse, a reprimand" and "a limitation on the collection of trust payment." First, no such limitation can be imposed without a stayed suspension. Moreover, we have already concluded that the DHC's conclusion as to the inadequacy of lesser punishments was the result of rational deliberation. Accordingly, no extraordinary circumstances exist to modify the Order of Discipline.

## III.  Conclusion

For the above reasons, we affirm the Order of Discipline.

AFFIRMED.

Judges GORE and MURRY concur.

Report per Rule 30(e).